**STATE of Missouri, Plaintiff-Respondent,**

v.

**James HUBBARD, Defendant-Appellant.**

**No. 56823.**

Supreme Court of Missouri,
Division No. 1.

July 17, 1972.

Motion for Rehearing or to Transfer to Court
En Banc Denied Sept. 11, 1972.

John C. Danforth, Atty. Gen., Richard S. Paden, Asst. Atty. Gen., Jefferson City, for respondent.

Public Defender Bureau, City of St. Louis, St. Louis, Robert C. Babione, Asst. Public Defender, for appellant.

HOLMAN, Presiding Judge.

Defendant, James Hubbard, was charged with the murder (in the second degree) of his wife, Lee Etha Hubbard. He was found guilty and his punishment was fixed by the jury at imprisonment for a term of 30 years. See §§ 559.020 and 559.030.[1] Defendant has appealed, and the sole point he raises here is that the trial court erred in refusing his proffered instruction submitting manslaughter. We affirm.

The testimony indicates that Lee was killed in her mother's apartment in St. Louis, Missouri, when stabbed twelve times in the chest by defendant. She died shortly thereafter as a result of a stab wound in her heart. During or immediately after the attack witnesses heard her scream, "James is trying to kill the baby," and "James stabbed me in my heart." At the time of the occurrence Lee was holding her baby. It was taken from her arms by her sister who ran into the room before the stabbing was completed. A family friend, Frank Harvey, Jr., also came into the room and tried to stop the stabbing by attempting to strike defendant with a board, at which time defendant fled from the apartment. The evidence indicates that for some time prior to the killing defendant had unsuccessfully tried to get his estranged wife to go home with him and that all of the testimony (except defendant's confession) was to the effect that there had not been any argument or threats.

Defendant was arrested in his home city of Milwaukee, Wisconsin, and on July 29, 1969, was returned to St. Louis by two detectives from the St. Louis Police Department. While they were driving back to St. Louis defendant made an oral confession to the officers, portions of which are as follows:

"He stated that he had been married for four years, and that he had two sons, a seventeen-month old child and a seven-month old child; that on the 15th [July 1969] he came home from work * * * and found a note from his wife pinned on the wall telling him that she had left and for him not to try to find her; * * * that he waited for a couple of days for her to return and when she didn't return he * * * took a Greyhound bus from Milwaukee to St. Louis; he arrived [in St. Louis] about 6:40 in the evening and went to his mother-in-law's house at 2714-A Franklin; * * * that his wife was there and he asked her why she had left and she said it was her business; he told her that she knew that she and the kids were the only things he ever loved, and he said she got mad and wanted to know why he came; * * * that she began cursing him and told him to leave, and that if he didn't he would come up dead or she would kill him. He said at this time he began crying and pleaded with her to come back to him and she refused. He said he spent the night there on the couch; that the next morning she told him to leave, and not to come back and see the kids or her; that he went across the street to a liquor store to get his mother-in-law six cans of Falstaff and a half pint of gin, and while he was in the liquor store he saw a display of knives; that there was a knife he liked and he bought it. * * * He went back to the apartment and he took a couple of swal-

---

lows of beer and a shot of gin; he sat in the living room and he began crying and his wife began cursing. He said he asked her to come in the living room and talk with him before he left and she wouldn't; that she stayed on the chair in the bedroom. He said he was sitting there and she cursed him some more and that she told him she was going to get someone to take care of him. He said he had a knife in his hand he had been playing with and he walked back to where she was; that he was going to cut her to scare her. However, he didn't know what happened, he stabbed her, and after he stabbed her he became frightened and ran out of the house."

The defendant did not testify.

Defendant concedes, as he must, that the evidence made a submissible case of murder in the second degree. As stated, however, he contends that there was evidence which required the submission of manslaughter. His motion for new trial does not specify that evidence, but states generally that "since there was evidence that there was considerable and substantial provocation before the stabbing alleged in the indictment, it was error for the Court to fail to instruct the jury on the offense of manslaughter." We have carefully read defendant's brief in an effort to find the precise evidence he relies on and have concluded that his theory is expressed in the argument portion of the brief, as follows: "He did not arrive in St. Louis prepared to kill. He took no violent action upon his arrival but rather tried to persuade his wife to return to him. He did not make threats or demonstrate hostility, but declared his love for his wife and family. * * * However, his wife responded with cursing and threats that she would get someone to kill him."

"The authorities are fairly harmonious in holding that, in order for a homicide to be reduced from murder to manslaughter, there must be a sudden unexpected assault, encounter, or provocation tending to excite the passion beyond control. It is not the assault or the provocation alone that reduces the grade of the crime, but it is the sudden happening or occurrence of the provocation so as to render the mind incapable of reflection and obscure the reason so that the elements of malice and deliberation necessary to constitute murder is absent, and therefore the crime is not murder, but manslaughter." State v. Smith, Mo.Sup., 445 S.W.2d 326, 331.

Defendant relies on provocation to eliminate the element of malice shown by the intentional stabbing of his wife with a deadly weapon. It must be conceded, however, that defendant was in no personal danger at the time of the killing because his wife, unarmed, was merely sitting in a chair holding her baby. His statement, prior to the stabbing, that he loved his wife would not be sufficient to eliminate the element of malice shown by his fatal actions. He relies solely on verbal provocation and we have held that such provocation is not sufficient to reduce the proved offense of second degree murder to manslaughter. See State v. Mosley, Mo.Sup., 415 S.W.2d 796 [4, 5], and cases cited therein.

In this case there is no evidence of any "sudden unexpected assault, encounter, or provocation tending to excite the [defendant's] passion beyond control." State v. Smith, supra. The defendant's acts are consistent with murder only and there is an entire absence of evidence which would tend to support a verdict of guilty of manslaughter. We accordingly rule that the trial court did not err in refusing to give the manslaughter instruction.

Defendant has cited the cases of State v. Tinson, Mo.Sup., 461 S.W.2d 764, State v. Ayers, Mo.Sup., 470 S.W.2d 534, and State v. Hunter, Mo.Sup., 444 S.W.2d 392, in support of his contention. We have read those cases and find that they are factually distinguishable and that none of them would support a ruling which would require the giving of a manslaughter instruction on the facts we have before us.

The judgment is affirmed.

All concur.