**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Frank THOMPSON,
Defendant-Appellant.**

No. 13728.

Missouri Court of Appeals,
Southern District,
Division Two.

July 30, 1985.

David Robards, Public Defender, Joplin, for defendant-appellant.

William L. Webster, Atty. Gen., Mark A. Richardson, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

MAUS, Judge.

A jury found the defendant guilty of second degree burglary. As a persistent offender, he was sentenced to imprisonment for 12 years. The case is unusual in two respects. First, the burglary was observed by three eyewitnesses. Second, the defendant has invoked the doctrine of diminished capacity as a defense to burglary. The following is a brief summary of the facts the jury could have found from the testimony.

On July 18, 1983, the defendant was in the Pub Bar in Joplin. The bar was across the street from Baum's Boot Store. The

defendant told another bar patron, who was drinking with him, that he was going to break into the boot store and get a pair of boots. In a joking manner, the patron told the defendant to get her a pair. The bar patron related defendant's intention to the bartender, who had just served the defendant a drink. The defendant left the bar and crossed the street. He entered the boot store by kicking out the glass in the front door. He took some boots from the store and fled. In addition to the bartender and patron, a second patron saw the defendant come through the broken door with a pair of boots in his hand.

The defendant presents two points on appeal. His first point alleges the trial court erred in admitting the identification testimony of the bartender because her in-court identification was tainted by the prior suggestion of the police that the defendant was believed to have committed the offense.

Evidence concerning the bartender's identification was adduced at a suppression hearing and at trial. The following are the salient facts developed by that evidence. A short time after the offense, the bartender was shown a photographic lineup consisting of six pictures. She knew all of the subjects but one, the defendant. Her testimony was that she told the officer, "take off the beard and this looks like him." The officer stated that she was less certain about her identification. He did not regard her as a good witness. As a result, speaking of the picture of the defendant, he said to her, "Well, this is the gentleman that we believe did it."

■ It is well established that even though an issue of the admissibility of identification testimony has been presented in a motion to suppress, the failure of a defendant to object to an in-court identification results in the issue not being preserved for appellate review. *State v. Mayes*, 671 S.W.2d 361 (Mo.App.1984). Defendant made no objection to the bartender's identification at the trial and may not complain of its admission.

■ Further, even assuming the photographic lineup accompanied by the officer's remark was unduly suggestive, the trial court did not err in admitting the in-court identification testimony of the bartender. Numerous cases hold that reliability, not suggestiveness, is the linchpin in determining the admissibility of identification testimony. *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *State v. Robinson*, 641 S.W.2d 423 (Mo. banc 1982). Even if an out-of-court identification procedure was suggestive, it does not invalidate a reliable in-court identification based on a recollection independent of the pretrial identification, and the reliability of the in-court identification is assessed under the totality of the circumstances. *State v. Littleton*, 649 S.W.2d 225 (Mo. banc 1983).

■ The bartender was examined by counsel and the court to determine if her in-court identification of the defendant was admissible by this standard. The bartender was positive that her in-court testimony was an independent identification because her attention had been riveted on the defendant after he announced he was going to commit a burglary. After such examination, the trial court found her in-court identification to be an independent and reliable recollection. As measured by the five factors delineated in *State v. Robinson*, supra, that determination was supported by the evidence and testimony properly admitted.

■ In addition, it is appropriate to observe that the defendant was unequivocally identified by the undisputed testimony of the two bar patrons, one of whom had known the defendant for ten years. The defendant could not have been prejudiced by the admission of the bartender's testimony. *State v. Williams*, 664 S.W.2d 226 (Mo.App.1983).

■ The defendant's second point is:
   The trial court erred in failing to instruct the jury on the lesser-included offense of trespass because there was a basis in the evidence for the jury to find

the defendant not guilty of burglary second degree but guilty of trespass in that from the evidence the jury could have found that the defendant was suffering a diminished mental capacity and so did not have the requisite intent for the greater offense of burglary second degree but nevertheless was guilty of trespass.

Trespass in the first degree (MAI–CR2d 23.40) is a lesser included offense of burglary in the second degree (MAI–CR2d 23.-52). *State v. Martin,* 624 S.W.2d 879 (Mo. App.1981); *State v. Neighbors,* 613 S.W.2d 143 (Mo.App.1980). The defendant did request an instruction on the lesser included offense as required by *State v. Olson,* 636 S.W.2d 318 (Mo. banc 1982). The defendant's second point, as stated by his astute appointed counsel, demands consideration of the doctrine of diminished mental capacity.

A discussion of the development and application of that doctrine is found in Annot., Criminal Law—Mental Condition, 22 A.L.R.3d 1228 (1968). It has been compared to the so called defense of voluntary intoxication. *Commonwealth v. Swartz,* 335 Pa.Super. 457, 484 A.2d 793 (1984). The doctrine of diminished capacity has been justified by the existence of a defense of voluntary intoxication.

Neither logic nor justice can tolerate a jurisprudence that defines the elements of an offense as requiring a mental state such that one defendant can properly argue that his voluntary drunkenness removed his capacity to form the specific intent but another defendant is inhibited from a submission of his contention that an abnormal mental condition, for which he was in no way responsible, negated his capacity to form a particular specific intent, even though the condition did not exonerate him from all criminal responsibility.

*United States v. Brawner,* 471 F.2d 969, 999 (D.C.Cir.1972). However, it has also been distinguished from that defense. *Hendershott v. People,* 653 P.2d 385 (Colo.

banc 1982), cert. denied, 459 U.S. 1225, 103 S.Ct. 1232, 75 L.Ed.2d 466 (1983).

The doctrine of diminished capacity has been accepted by decision. Other courts have refused to do so. The states were cataloged in *State v. Correra,* 430 A.2d 1251 (R.I.1981). The Supreme Court of Delaware recently declined to recognize the doctrine stating: "[T]he potential impact of concepts such as diminished capacity or partial insanity—however labeled—is of a scope and magnitude which precludes their proper adoption by an expedient modification of the rules of evidence." *Bates v. State,* 386 A.2d 1139, 1143 (Del.1978). Even more recently, in *Johnson v. State,* 292 Md. 405, 439 A.2d 542 (1982), the Court of Appeals of Maryland followed suit citing the following quotation: "The criminal law cannot 'vary legal norms with the individual's capacity to meet the standards they prescribe, absent a disability that is both gross and verifiable, such as the mental disease or defect that may establish irresponsibility. The most that it is feasible to do with lesser disabilities is to accord them proper weight in sentencing.'" *United States v. Moore,* 486 F.2d 1139, 1180 (D.C. Cir.1973), cert. denied, 414 U.S. 980, 94 S.Ct. 298, 38 L.Ed.2d 224 (1973).

The doctrine is embodied in the Model Penal Code § 4.02(1). That provision has been adopted in Missouri in § 552.030.3 which provides:

3. Evidence that the defendant did or did not suffer from a mental disease or defect shall be admissible

(1) To prove that the defendant did or did not have a state of mind which is an element of the offense; or

(2) For the purpose of determining whether or not the defendant, if found guilty of a capital offense, shall be sentenced to death or life imprisonment.

The doctrine, as established by decision or as embodied in statute, is impossible of a concise statement. Common expressions of the doctrine are:

The diminished-capacity doctrine recognizes that although an accused was not suffering from a mental disease or de-

fect when the offense was committed sufficient to exonerate him of all criminal responsibility, his mental capacity may have been diminished by intoxication, trauma, or mental disease so that he did not possess the specific mental state or intent essential to the particular offense charged. A defendant claiming diminished capacity concedes his responsibility for the act but claims that, in light of his abnormal mental condition, he is less culpable.

*State v. Correra,* supra, at 1253.

But, while this defendant is therefore ineligible for a finding of not guilty by reason of insanity, his mental abnormality may nonetheless be a most relevant consideration in the determination of whether he is guilty of the crime charged. Under the doctrine referred to as partial responsibility, diminished responsibility, or (somewhat less accurately) partial insanity, evidence concerning the defendant's mental condition is admissible on the question of whether the defendant had the mental state which is an element of the offense with which he is charged.

LeFave & Scott, Criminal Law § 42, p. 326 (1972) (footnote omitted).

The doctrine has been said to be "a special negative defense." *State v. Carter,* 585 S.W.2d 215 (Mo.App.1979); MAI–CR2d 3.74 Notes on Use 6. But, it has also been referred to as a rule of evidence. Viewing the doctrine in that concept, a limitation restricting the admission of evidence of diminished capacity to offenses involving a specific intent has been held to be a denial of due process proscribed by the Fourteenth Amendment to the Constitution of the United States. *Hendershott v. People,* *supra.* Under this holding, the doctrine is available as a defense to all crimes involving a mental state. However, other decisions hold such a limitation to be permissible as the state may constitutionally limit defenses to crimes and provide for the exclusion of evidence determined to be unreliable. See *People v. Lynn,* 159 Cal.App.3d 715, 206 Cal.Rptr. 181 (1984).

Irrespective of its definition, the decisive impact of the doctrine is to establish the admissibility of expert testimony concerning a defendant's capacity to form a state of mind or intent. *McCarthy v. State,* 372 A.2d 180 (Del.1977); *Commonwealth v. Weinstein,* 499 Pa. 106, 451 A.2d 1344 (1982). Whether the opinion of an expert that a defendant, by reason of mental disease or defect, was not capable of having a state of mind which is an element of an offense is called a defense or is otherwise labeled, a jury may accept that opinion. The practical effect of such acceptance is to provide a basis for the acquittal of a defendant of a criminal charge because of mental disease or defect which would not constitute a defense under § 552.030.1.

It is generally recognized, however, that adoption of the concept of diminished capacity as a separate defense involves 'a fundamental change in the common law theory of [criminal] responsibility.' *Fisher v. United States,* 328 U.S. 463, 476, 66 S.Ct. 1318, 1325, 90 L.Ed. 1382 (1946). This is true because the introduction of expert psychiatric testimony concerning the defendant's mental aberrations when the basic sanity of the accused is not at issue conflicts with the governing principle of the criminal law that all legally sane individuals are equally capable of forming and possessing the same types and degrees of intent.

*Johnson v. State,* supra, 292 Md. at 551, 439 A.2d 542. It is interesting to note evidence of mental disease or defect excluding responsibility creates an issue upon which the burden of proof is on the defendant. Evidence of diminished capacity creates an issue concerning the defendant's mental condition upon which the state has the burden of proof.

The doctrine has been subjected to divers limitations. The judicially established doctrine has been declared applicable only to first degree murder. *Commonwealth v. Swartz,* supra. This is compatible with the historical development of the doctrine. LeFave & Scott, supra.

In many jurisdictions, the doctrine is applicable only to a specific intent as distinguished from a general intent. *State v. Baker*, 691 P.2d 1166 (Hawaii 1984); *Veverka v. Cash*, 318 N.W.2d 447 (Iowa 1982); *State v. Doyon*, 416 A.2d 130 (R.I.1981); *State v. Huber*, 356 N.W.2d 468 (S.D.1984). See also, *United States v. Martin*, 747 F.2d 1404 (11th Cir.1984); *People v. Wetmore*, 22 Cal.3d 318, 149 Cal.Rptr. 265, 583 P.2d 1308 (banc 1978); *Commonwealth v. Brantner*, 486 Pa. 518, 406 A.2d 1011 (1979). The same limitation has been applied when the doctrine has been created in general terms by statute. *Hensel v. State*, 604 P.2d 222 (Alaska 1979); *Hendershott v. People*, supra; *State v. D'Amico*, 136 Vt. 153, 385 A.2d 1082 (1978). The scope of such a limitation varies because of the elusive definition of specific intent. See e.g., *People v. Greenfield*, 134 Cal.App.3d Supp. 1, 184 Cal.Rptr. 604 (1982); *Veverka v. Cash*, supra; *State v. Doyon*, supra; *State v. Huber*, supra.

A similar limitation has been expressed: "Acceptance of the doctrine requires that there be some lesser-included offense which lacks the requisite specific intent of the greater offense charged. Otherwise, the doctrine of diminished responsibility becomes an impermissible substitute test of criminal responsibility." *McCarthy v. State*, supra, at 183. Also see *State v. Doyon*, supra. However, other courts hold "the partial responsibility defense is available whether or not the crime charged includes a lesser offense." *State v. Booth*, 284 Or. 615, 588 P.2d 614 (banc 1978). Also see *People v. Wetmore*, supra.

█ Section 552.030.3 is not by its terms limited to a specific intent or the mental states of "purposely" or "knowingly" as distinguished from "recklessly" or "criminal negligence." The doctrine has been held applicable to the latter two mental states as well as the former. *Hendershott v. People, supra.* That proposition seems to have been implied in a determination there was no error in failing to define mental disease or defect because a defendant was convicted only of manslaughter,

which was said, at the time, not to require a mental element. *State v. Mee*, 643 S.W.2d 601 (Mo.App.1982).

However, *State v. Anderson*, 515 S.W.2d 534 (Mo. banc 1974) held that "when the legislature decided in 1963 to incorporate § 4.02(1) of the Model Code into the new Missouri Act, it did so with the intention of adopting the accompanying interpretation thereof by the drafters of that provision." Id. at 539. Those comments include the following:

> Some jurisdictions decline for reasons of policy to accord to evidence of mental disease or defect an admissibility co-extensive with its relevancy to prove or disprove a material state of mind. See e.g. *Fisher v. United States*, 328 U.S. 463 [66 S.Ct. 1318, 90 L.Ed. 1382] (1946). We see no justification for a limitation of this kind. If states of mind *such as deliberation or premeditation* are accorded legal significance, psychiatric evidence should be admissible when relevant to prove or disprove their existence to the same extent as any other relevant evidence.

Model Penal Code § 4.02 (Tent. draft No. 4, Appendix C 1955) (emphasis added). The distinction between specific intent and general intent was recognized in *State v. Strubberg*, 616 S.W.2d 809 (Mo. banc 1981).

However, a determination that the doctrine is applicable only in respect to a specific intent or a state of mind of "purposely" or "knowingly" is not decisive of when the doctrine requires an instruction on a lesser included offense. Evidence requiring an instruction upon a lesser included offense is now defined by statute. "The court shall not be obligated to charge the jury with respect to an included offense unless there is a basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense." § 556.046.2. It has been held, "Section 556.046.2 limits the requirement of instructing down to those instances where there is some affirmative evidence of a lack of an essential element of the higher offense which would not only autho-

rize acquittal of the higher but sustain a conviction of the lesser." *State v. Olson,* supra, at 322. Also see *State v. Lewis,* 642 S.W.2d 627 (Mo. banc 1982). Further, it is well established that "the fact that a jury may disbelieve some of the evidence of the State, or decline to draw some or all of the permissible inferences, does not entitle the defendant to an instruction otherwise unsupported by the evidence, . . . ." *State v. Achter,* 448 S.W.2d 898, 900 (Mo.1970).

It has not been expressly established in this state that an expert opinion, standing alone, that a defendant by reason of mental disease or defect could not have a relevant intent or state of mind, requires an instruction on a lesser included offense. Some cases support the conclusion there should be a limitation upon the requirement of an instruction on a lesser included offense solely on the basis of an opinion concerning diminished capacity. A contrary rule can lead to a form of "automatic submission" irrespective of the objective evidence. It also leads to indefensible submissions to a jury. For example, it was on that basis an instruction on manslaughter was given in *State v. Cason,* 596 S.W.2d 436 (Mo.1980), cert. denied, 449 U.S. 982, 101 S.Ct. 397, 66 L.Ed.2d 243 (1980). In that case an intoxicated defendant left his house and shot the departing sheriff, who had just taken him home, three times in the head.

The unique adaptation of the doctrine to a subjective state of mind has been noted. "Given the obviously subjective character of the premeditation and deliberation requirements, it is perhaps not surprising that many courts have adopted the partial responsibility doctrine in cases involving a prosecution for first degree murder." LeFave & Scott, supra, at 327. To impose no limitation upon instructing upon lesser included offenses solely upon the basis of such opinion testimony does not acknowledge that in most instances intent can be best determined by what was done. With the exception of first degree murder, (see MAI–CR2d 13.02) the possibility that a jury may not find the existence of the only state of mind or intent that may be ration-

ally inferred from the evidence is no basis to instruct upon a lesser included offense. For example, the protestation of a defendant who fired a rifle into an explosives truck "that he did not intend to hurt anybody is no excuse and does not serve to reduce the crime from second degree murder to manslaughter." *State v. Shuler,* 486 S.W.2d 505, 509 (Mo.1972). When a husband followed his estranged wife to St. Louis and stabbed her 12 times in the chest, "[t]he defendant's acts are consistent with murder only and there is an entire absence of evidence which would tend to support a verdict of guilty of manslaughter." *State v. Hubbard,* 484 S.W.2d 224, 226 (Mo.1972). When a victim's hands were tied behind his back and he was beaten and strangled to death, "the circumstances show murder in the first degree and no lesser degree of homicide, the court is not required to instruct on lesser degrees." *State v. Crow,* 486 S.W.2d 248, 255 (Mo.1972). Also see *State v. Jackson,* 496 S.W.2d 1 (Mo. banc 1973), cert. denied, 414 U.S. 1115, 94 S.Ct. 847, 38 L.Ed.2d 742 (1973).

A limitation based upon objective evidence seems to have been, at least in part, the basis for finding no error in a refusal to instruct upon common assault as a lesser included offense of assault with the intent to kill, even though there was evidence of diminished capacity. In reaching that conclusion the court said:

> The defense attempted to rebut the state's evidence of an intent to kill by attempting to show that appellant acted impulsively and could not form the intent to kill. Viewing the entire record before us, we find no evidence to support a finding of a general intent to injure upon the part of appellant. It was not error to omit the instruction on common assault, . . . .

*State v. Strubberg,* supra, at 817.

A similar case is *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 454 A.2d 937 (1982). In that case a homicide victim was scheduled to testify against the defendant. The defendant obviously had the victim hand-

cuffed in a van. He shot the victim twice with a .22 caliber weapon while in the van. The defendant dragged the victim from the van into an isolated area and there shot him twice in the back with a .357 magnum. The court appropriately refused to admit an expert opinion concerning the defendant's capacity to form an intent to kill. In doing so, it was said:

> Thus, in this case as in *Commonwealth v. Weinstein,* supra, appellant's 'expert was unable to speak to the issue of specific intent, recognizable by the law, and was unable logically to relate [appellant's] underlying disease or mental defect to his uncontrollable act. [Appellant] *was clearly able to formulate and carry out a plan or design.'* 499 Pa. at 118, 451 A.2d at 1350. Accordingly, the trial court did not err in refusing to allow Dr. Schneider to express his opinion as to whether appellant possessed sufficient mental capacity to form the specific intent to kill,....

Id. 454 A.2d at 946 (emphasis added).

However, a limitation on lesser included offense instructions seems to be in conflict with *State v. Anderson,* supra. In that case, the armed defendant went to the home of his estranged girl friend and shot and killed first her father and then her mother. A psychologist and a psychiatrist testified the defendant suffered from severe depression, which they characterized as mental disease or defect. As a result, they concluded he was unable to premeditate, that is to think of the matter before hand, however short.

> Having concluded that by the adopting of § 552.030(3)(1) the legislature adopted a rule of evidence making admissible evidence of the absence of premeditation in the case of a defendant charged with murder, it follows that where, as here, sufficient evidence thereof was introduced to permit the jury to conclude that defendant was not capable of premeditation, an instruction on manslaughter was mandatory and refusal of such an instruction was reversible error.

*State v. Anderson,* supra, at 542. Such a limitation also seems to be contrary to the reasoning in *State v. Cason,* supra, and *State v. Carter,* 585 S.W.2d 215 (Mo.App. 1979).

Such problems may prompt a legislative return to non-recognition of expert testimony establishing a defense based upon a mental condition less than mental disease or defect excluding responsibility as defined by § 552.030.1. This is the result of recent legislation in California. *People v. Lynn, supra;* Note on The Abolition of Diminished Capacity as a Defense in California, 5 Crim.Just.J. 325 (1982).

However, under the evidence in this case, it is not necessary to resolve the many questions raised, some of which have been noted, by the application of the doctrine to the crime of burglary. Even assuming an expert opinion, that by reason of mental disease or defect the defendant could not form the intent to steal would require an instruction upon trespass in the first degree, the trial court did not err in failing to give such an instruction. The psychologist relied upon by the defendant examined him in 1980 and 1981. He based his opinion of the defendant's mental condition on July 18, 1983 upon those prior examinations and test results contained in reports of a psychologist and a psychiatrist who examined the defendant in December, 1983. The conclusions of the latter two experts were that the defendant did not suffer from a mental disease or defect.

The psychologist called by the defendant found the defendant had a low I.Q., a history of alcohol abuse and that drawings by and tests of the defendant indicated he had some brain damage. The psychologist concluded the defendant had a mental disease or defect excluding responsibility. That proposition was submitted to the jury by an instruction patterned upon MAI-CR2d 2.33. That submission was rejected by the jury.

█ The existence of a mental disease or defect not connected to the formation of an intent or existence of a relevant state of mind, does not require the submission of a lesser included offense. *State v. Jamison,*

94 Wash.2d 663, 619 P.2d 352 (banc 1980). "[P]sychiatric testimony is competent in Pennsylvania on the issue of specific intent to kill if it speaks to mental disorders affecting the cognitive functions necessary to formulate a specific intent. Where, as here, it does not, it is irrelevant and hence inadmissible." *Commonwealth v. Weinstein,* supra, 451 A.2d at 1347.

 In this case, paraphrasing Judge Somerville, there was no evidence to bend, distort, or contradict the reasonable inference that defendant was in the boot store for the purpose of stealing. *State v. Neighbors,* supra. The trial court did not err in failing to instruct upon trespass in the first degree. *State v. Gitz,* 680 S.W.2d 294 (Mo.App.1984); *State v. Walters,* 636 S.W.2d 122 (Mo.App.1982); *State v. Davis,* 625 S.W.2d 903 (Mo.App.1981); *State v. Martin,* supra. The judgment is affirmed.

PREWITT, C.J., and CROW, J., concur.

HOGAN, P.J., concurs in result.