**STATE of Missouri, Plaintiff–Respondent,**

v.

**Barry S. BELL, Defendant–Appellant.**

**Barry S. BELL, Movant–Appellant,**

v.

**STATE of Missouri, Respondent.**

**Nos. 15786, 16210.**

Missouri Court of Appeals, Southern District, Division Two.

Oct. 23, 1990.

William L. Webster, Atty. Gen., Robert V. Franson, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent-respondent.

C. Clifford Schwartz, Shaw, Howlett & Schwartz, Clayton, for defendant-appellant-movant-appellant.

MAUS, Judge.

Defendant Barry S. Bell was in the Circuit Court of Iron County convicted of assault in the second degree and sentenced to imprisonment for five years. His motion under Rule 29.15 attacking that conviction and sentence was denied by the Circuit Court of Iron County. Defendant appealed his conviction and sentence and appealed the denial of his motion to this court. Heretofore, this court affirmed the conviction and denial. The defendant's application for transfer of the two appeals to the Supreme Court was sustained. Thereafter, on October 9, 1990, the Supreme Court ordered that said appeals be retransferred to the Missouri Court of Appeals—Southern District. With the addition of this paragraph, the original opinion of this court is readopted. That opinion is as follows.

Count I of a second amended information charged the defendant committed the offense of assault in the first degree on August 27, 1986, by knowingly causing serious physical injury to Cecil Wayne Gilmore (Gilmore) by stabbing him in the chest. Count II charged the defendant committed murder in the second degree "in that on or about August 27, 1986, ... the defendant with the purpose of causing serious physical injury to Ralph Wayne Rodgers [Rodgers] caused the death of [Rodgers] by stabbing him".

A jury found the defendant guilty of assault in the second degree (submitted by MAI–CR 3d 319.04 as a lesser included offense) under Count I. The jury could not reach a verdict upon Count II and a mistrial was declared upon that count. Upon Count I, the court sentenced the defendant as a prior offender, § 558.016, to imprisonment for five years. The defendant subsequently pled guilty to voluntary manslaughter under Count II. The defendant appeals from his conviction and sentence upon Count I. The defendant also filed a motion for relief under Rule 29.15. Following an evidentiary hearing, the motion was denied. He also appeals from that denial. The appeals have been consolidated but will be considered separately.

### No. 15786—*Direct Appeal*

There is no dispute concerning many of the fundamental facts presented to the jury. Those facts include the following. The incident from which charges arose occurred at the rural home of defendant. The defendant was 33 years old. He had suffered a head injury in 1980 and, as a result, his mental abilities were impaired. Sherry Will (Will) was his girl friend for two years and lived with defendant off and on. She was 17 years old.

The deceased Rodgers was 30 years old. He had been married and had children, but was divorced. Laura Golliday (Golliday) was his girl friend. She was 15 years old. While their living arrangements are not clear, it is a reasonable inference Rodgers and Golliday lived together.

Golliday and Will were friends. They attended school together. There was a conflict in testimony concerning the degree of friendship between the two couples. The defendant and Will had spent one night at the residence of Rodgers and Golliday. Rodgers and Golliday were visitors to defendant's house and had spent the night there. The two couples had in the past been fishing together.

Gilmore was a cousin of Rodgers. Rodgers, Gilmore and Golliday spent the evening in question at a "baitshop". The men played pool and drank beer. Each consumed about 12 beers. Golliday spent the evening talking to friends. About mid-

night, at Rodgers' suggestion, the group went to the defendant's house. They took a 12-pack of beer.

Golliday, Gilmore and Will testified. They are in substantial agreement concerning the following outline of the ensuing events. The group entered and for a short time stayed in the living room. The men, the defendant, Rodgers and Gilmore, then went to a room to which the defendant had moved his pool table. The men apparently worked on or discussed working on the pool table. Golliday and Will stayed in the living room talking. In about 15 minutes, the men returned. Rodgers and Will engaged in "horseplay", including a pillow fight. Will briefly left the room and returned with a shotgun. Rodgers took the shotgun from her and the shotgun fired into the floor. The defendant put the shotgun away.

The visiting group decided to leave. The defendant and Will accompanied them to the porch. Golliday and Gilmore testified Gilmore did not go with the rest of the group to the porch, but came after the defendant had stabbed Rodgers. Will testified Gilmore accompanied the group. On the porch there was a struggle during which the defendant first stabbed Rodgers and then Gilmore. Gilmore ran from the porch. At Will's behest, the defendant went into the house. Gilmore returned. He and the two women got Rodgers in the car. Golliday drove to the hospital where Rodgers died from his wounds.

In general, Golliday portrayed the groups' visit to the defendant's house as a friendly party. They knocked and were welcomed. When the men returned from the pool room, Rodgers got a pillow and lay on the floor. The defendant and Will asked them to stay all night. Golliday declined as they had to get to the Gilmore home. Rodgers and Will engaged in a good natured pillow fight and verbal jabbing. For some reason Will's mood changed. She appeared with the shotgun and said she was going to blow some heads off. Rodgers took the shotgun and it accidentally fired. Golliday and Rodgers went to the porch to leave. Gilmore inquired about the

bathroom and did not accompany them. Will followed Golliday and Rodgers, calling Rodgers names and challenging him. She raised her hand as if to hit Rodgers. Rodgers grabbed her arm and the defendant then stabbed him in the temple. Rodgers fell and the defendant stabbed him again in the temple. At this point, Gilmore came onto the porch. He grabbed the defendant in an effort to pull him from Rodgers. The defendant then stabbed Gilmore three or four times. One wound was to the chest and just missed the heart. After they got Rodgers in the car, the defendant reappeared on the porch with a gun.

On the other hand, Will characterized the visit as an obnoxious, drunken intrusion. The group entered without knocking. They demanded "a party". The group was asked to leave. Rodgers challenged her to fight. It was when they did not leave she got the shotgun. Rodgers took it and purposely fired it into the floor. When she went onto the porch, Rodgers grabbed her and was banging her against the house when the defendant grabbed Rodgers to pull him off Will. Gilmore did not go to the bathroom, but had been standing there watching. When the defendant pulled Rodgers from Will, Rodgers and Gilmore beat the defendant. Gilmore said he was going to kill the defendant. It was then the defendant stabbed Rodgers and Gilmore. Will characterized the defendant's actions as "Barry just had his knife out and was just poking it at them trying to get them off of him."

In general, Gilmore confirmed the version related by Golliday. He did believe Rodgers had intentionally fired the shotgun. When the visitors decided to leave, he started to the bathroom. He had reached the bathroom door when he heard a scream. He ran to the porch and saw the defendant over Rodgers. Gilmore said nothing. The defendant turned on him and stabbed him three or four times.

In addition to Will, the defendant presented Dr. Parwatikar, M.D., a psychiatrist whose qualifications were admitted. He had examined the defendant. He found

the defendant had "mixed organic syndrome" or, in laymen's language, brain damage. He also found the defendant to be antisocial. In answer to a hypothetical question, he said an individual like the defendant under hypothesized circumstances such as the incident in question, would "have difficulty in forming a purpose", that he acted impulsively. He did, however, know right from wrong and was aware of his actions.

■ The defendant's first point is that the conviction must be set aside because

"[t]he trial court erred in its handling of the jury after their retirement at 4:40 p.m., forcing them to deliberate until 3:20 a.m., overruling defendant's various motions for mistrial. Trial court's errors include ignoring loud laughter and noise from the jury; delivering a 'hammer' instruction after midnight; calling the jury in; thereafter calling in an individual juror and communicating with him; ignoring the information that the jury was deadlocked; calling in a jury a second time under the guise of MAI–CR3rd 312.-02; and calling the jury back a third time, then sending them back to deliberate"

and those actions resulted in a coerced verdict. It strains judicial tolerance to recognize this as stating "briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous...." Rule 30.06(d). However, giving the defendant the benefit of the doubt, it will be considered.

At first blush the point appears that it could have merit. However, careful consideration of each of the disjointed contentions establishes that it does not.

"The length of time which a jury is allowed to deliberate and the determination of whether to read MAI–CR 2d 1.10 are within the discretion of the trial court. State v. Broadux, 618 S.W.2d 649, 651–652[1] (Mo. banc 1981)." State v. Leroy, 724 S.W.2d 277, 279 (Mo.App. 1987).

The fact the jury in this case was permitted to deliberate approximately eleven hours

does not establish coercion. Nor does the fact the hammer instruction was given after approximately seven hours' deliberation. Cf. State v. Greer, 616 S.W.2d 82 (Mo.App.1981) (nine hours) and State v. Leroy, supra (eight hours). The failure of the defendant to establish an abuse of discretion resulting in prejudice to him by the length of deliberation is more apparent when it is noted that at 1 a.m. the foreman of the jury announced, "We've had a decision on the assault for quite some time."

■ The defendant's general statement concerning his motions for a mistrial cannot be considered as presenting anything for review. Nor does trial counsel's general observation, "And obviously from the laughter, the raucous noise that we can't help overhearing out here in the courtroom, I don't think this jury is taking it seriously enough", establish jury misconduct.

■ The trial court did not "call in" an individual juror. The foreman of the jury told the sheriff he wanted to make a statement to the court. He was escorted to the courtroom where, in open court with the defendant, his counsel and the prosecuting attorney present, he stated that the jury could not reach a verdict upon Count II. While this was a departure from usual procedure, it was not a forbidden separation of the jury. State v. McGee, 336 Mo. 1082, 83 S.W.2d 98 (1935). The trial court found this procedure did not prejudice the defendant, and the defendant has not demonstrated the finding is erroneous.

■ Nor did the trial court call in the jury "a second time under the guise of MAI–CR3rd 312.02". After the foreman's statement, the court called the jury into the court. The court then very properly followed Notes on Use 4 to MAI–CR 3d 312.-02. When the jury answered no to the first suggested question, the third suggested question was then propounded. The record does not reflect the affirmative or negative "raised hands" but the court permitted the jury to deliberate approximately 30 more minutes. This does not establish an abuse of discretion by the trial court. The defendant does not make it such by asserting the

trial court acted "in the *guise*" of an approved instruction. A verdict upon Count I and the failure to reach a verdict upon Count II is an indication the jury was not coerced. The defendant's first point is denied.

■ The defendant's next point is the "[t]rial court erred in overruling defendant's pre-trial motion in limine for judgment of acquittal or dismissal of the information based on the medical evidence submitted by sworn deposition, and the ability or lack of ability of defendant to have formed a requisite mental state to commit the crime. Trial court further erred in overruling defendant's motion for acquittal at the close of all evidence for the reason that the medical evidence of Dr. Parwatikar showed that the defendant had organic brain damage and acted on impulse. Prosecutor thus failed to prove the required mental state of 'knowingly' committing a crime, and trial court should have sustained defendant's motions. Failure to do so was material and prejudicial error."

The defendant's motion in limine for judgment of acquittal was founded upon the following allegations. That Dr. Sam Parwatikar, an acknowledged expert psychiatrist, was the only expert witness disclosed by the state or by the defendant. That the deposition of Parwatikar established the defendant acted impulsively and did not have the required mental state. The defendant concludes that with no other expert testimony the state is bound by Dr. Parwatikar's testimony. Defendant cites no authority even permitting the trial court to enter a judgment of acquittal upon the basis of physicians' depositions filed with the court. There is none. The trial court did not err in denying the pretrial motion for acquittal.

[6, 7] The defendant supports his contention of error concerning his post-trial motion of acquittal by the following argument. That to sustain the verdict of guilty of assault in the second degree, there had to be evidence from which the jury could find the defendant *"knowingly* caused serious physical injury to Cecil Wayne Gil-

more". That the provisions of § 552.015 include the following: "2. Evidence that the defendant did or did not suffer from a mental disease or defect shall be admissible in a criminal proceeding: ... (8) To prove that the defendant did or did not have a state of mind which is an element of the offense." The only expert testimony in the case was that of Dr. Parwatikar. As noted, Parwatikar testified that the defendant suffered from a mental defect and that he acted impulsively, without the mental state of "knowingly". Therefore, the defendant concludes, the evidence is not sufficient to support a finding of knowingly and his motion for acquittal at the close of the evidence should have been sustained.

That argument does not establish the defendant's motion for acquittal at the close of the evidence had merit.

"In testing the sufficiency of the evidence, the court accepts the State's evidence as true and gives the State the benefit of all reasonable inferences while disregarding all evidence and inferences to the contrary." *State v. Gardner*, 741 S.W.2d 1, 9 (Mo. banc 1987), cert. denied, 486 U.S. 1025, 108 S.Ct. 2001, 100 L.Ed.2d 232 (1988).

Evidence in the form of psychiatric testimony is not necessary to establish a defendant acted with the intent or other mental state.

"The mental elements of an act of an offense, are generally not susceptible of direct proof, and may be established by circumstantial evidence or inferred from surrounding facts." *State v. Taylor*, 714 S.W.2d 767, 770 (Mo.App.1986).

In fact, in most instances intent can best be determined by what was done. *State v. Strubberg*, 616 S.W.2d 809 (Mo. banc 1981); *State v. Thompson*, 695 S.W.2d 154 (Mo. App.1985). For example, evidence of a defendant's actions from which deliberation can be reasonably inferred is recognized as sufficient to establish that mental element. *State v. McDonald*, 661 S.W.2d 497 (Mo. banc 1983), cert. denied, 471 U.S. 1009, 105 S.Ct. 1875, 85 L.Ed.2d 168 (1985).

Section 552.015, which recognizes the doctrine of diminished capacity, does make

psychiatric testimony admissible to prove that a defendant did or did not have a given state of mind. Such testimony may be the basis for an instruction upon a lesser included offense. *State v. Thompson,* supra. However, the fact that the only psychiatric testimony in this case was to the effect that the defendant did not *knowingly* cause serious physical injury to Gilmore, does not mean that the jury must reject a reasonable inference from his actions that the defendant acted knowingly. It has been said,

> "Moreover, even in the absence of this expert testimony that appellant was not suffering from a mental disease excluding responsibility for his conduct, the statutory presumption of sanity, § 552.030.6, RSMo.1986, standing alone, is evidence sufficient to sustain the finding of the trier of fact on this issue." *State v. Harris,* 774 S.W.2d 487, 492 (Mo.App.1989).

A jury is entitled to reject psychiatric testimony and determine if "knowingly" or other mental element is established by reasonable inference from a defendant's actions. Cf. *State v. Lee,* 654 S.W.2d 876 (Mo. banc 1983) (mental disease or defect excluding responsibility); *State v. Willis,* 662 S.W.2d 252 (Mo. banc 1983) (entrapment). Also see *State v. Thompson,* supra.

■ The defendant's third point is the "[t]rial court erred in failing to grant a mistrial ... after [the] prosecutor ... asked ... the sheriff [if the] defendant had made a statement" because the question violated the defendant's "Fifth constitutional Amendment rights to remain silent". The question referred to was included in the following dialogue.

> "Q. Okay, did you receive a statement from Laura Golliday?
> A. Yes I did.
> Q. Did you take a statement from Cecil Gilmore?
> A. Yes.
> Q. Were you able to interview Ralph Wayne Rodgers?
> A. No, I was not.
> Q. Were you able to interview Sherry Will?

> A. Yes.
> Q. The girl friend of the defendant in this case, you interviewed her?
> A. Yes, I believe I did.
> Q. Did she give you a statement?
> A. I believe she did.
> Q. Did you interview the defendant, Barry Bell?
> A. Briefly, I believe.
> Q. You arrested him didn't you?
> A. Yes I did."

At this point defense counsel moved for a mistrial upon the basis stated in the above point.

The defendant correctly argues it is improper to elicit testimony concerning a defendant's silence after arrest. *State v. Grubb,* 705 S.W.2d 83 (Mo.App.1985). However, the question and answer referred to are not objectionable on that basis. *State v. Smart,* 756 S.W.2d 578 (Mo.App. 1988).

The defendant now argues that a mistrial was required because no *Miranda* warning was shown to have been given and the inference is that the defendant was arrested because of the content of his statement. That is a strained construction. It is not clear even under such construction error was committed. Cf. *State v. Schwendt,* 645 S.W.2d 385 (Mo.App.1983). But, assuming that it was, giving consideration to the defendant's belated contention does not establish the trial court erred in not declaring a mistrial.

> "The declaration of a mistrial is a drastic remedy which should be granted only in those circumstances when the incident is so grievous that the prejudicial effect can be removed in no other way. *State v. Parker,* 476 S.W.2d 513, 515–516[4–7] (Mo.1972). An appellate court reviews the trial court's decision not to declare a mistrial only for abuse of discretion. *Id.*
> Ordinarily, the trial court acts within its discretion and cures error in the admission of evidence by withdrawing the improper evidence and instructing the jury to disregard it, rather than declaring a mistrial." *State v. Laws,* 668 S.W.2d 234, 238 (Mo.App.1984).

Any inference from the foregoing question and answer adverse to the defendant was indirect and minimal. It is apparent the sheriff had cause to arrest the defendant upon the basis of the statements of Golliday and Gilmore. The statement was not further referred by the state.

The test for determining if prejudice from the erroneous admission of evidence cannot be cured by a direction to the jury has been clearly stated.

"'When an improper incident occurs during trial and the jury is instructed to disregard it, "... the reviewing court, in order to hold that the failure to grant a mistrial was reversible error, must determine and conclude as a matter of law from the entire record that the error was prejudicial and so impressive that its effect was not removed by the action of the trial court." *State v. Dennison*, 428 S.W.2d 573, 577 (Mo.1968).' To the same effect see *State v. Franklin*, 526 S.W.2d 86[7, 8] (Mo.App.1975)." *State v. Jones*, 532 S.W.2d 772, 775 (Mo.App.1975).

This court cannot conclude that any error in the admission of the question and answer was prejudicial and so impressive its effect could not have been removed by a direction to the jury. "The fact that the defendant sought no relief other than a mistrial cannot aid him." *State v. Gilmore*, 681 S.W.2d 934, 943 (Mo. banc 1984). The defendant's third point has no merit.

■ The defendant's last point on his direct appeal is that the trial court erred in refusing to give an instruction in the form of MAI–CR 3d 306.08 submitting justification for his assault upon Gilmore as the defense of Will. "Whenever there is evidence supporting this defense, this instruction must be given." MAI–CR 3d 306.08, Notes on Use 2. MAI–CR 3d 306.08 does succinctly state the controlling law.

"In order for a person lawfully to use force in defense of another person, such a defender must reasonably believe the person he is trying to protect is in imminent danger of harm from a third person."

Consideration of the evidence most favorable to the defendant establishes only that Gilmore watched Rodgers grapple with Will and struggled with the defendant when the defendant pulled Rodgers from Will. Whether or not there was evidence to establish that by stabbing Gilmore, as distinguished from Rodgers, the defendant reasonably believed he was protecting Will, was a matter of law for the trial court. *State v. Nunn*, 697 S.W.2d 244 (Mo.App. 1985). The trial court's determination there was no such evidence is correct. The defendant's final point on direct appeal is denied. The judgment is affirmed.

### No. 16210—*Rule 29.15 Appeal*

■ The defendant's sole point in his brief on his appeal from the denial of his motion under Rule 29.15 reads:

"[Trial] counsel failed to develop elemental material directly related to the primary issue of defense of another person and self-defense, failed to call witnesses, and generally providing ineffective assistance of counsel, depriving defendant of a constitutionally fair trial."

The requirements for a brief on appeal in a criminal case include the following:

"The points relied on shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous with citations of authorities thereunder." Rule 30.06(d).

The same requirement is found in Rule 84.04(d). Defendant's sole point is a general statement of a conclusion of counsel's failure in two areas and the further conclusion trial counsel in general provided ineffective assistance. This point does not state concisely "wherein and why" the motion court erred. *Tate v. State*, 773 S.W.2d 190 (Mo.App.1989). That being so the defendant has preserved nothing for appellate review of the denial of his 29.15 motion. *State v. Smith*, 770 S.W.2d 469 (Mo. App.1989). That judgment of denial is affirmed on that basis. Rules 30.20 and 84.-13.

■ Moreover, a gratuitous review of that denial does not aid the defendant.

"Review of the trial court's ruling on a 29.15 claim is limited to a determination

of whether the findings and conclusions are clearly erroneous. Rule 29.15(j). Such findings and conclusions will be found to be clearly erroneous only if, after a review of the entire record, the appellate court is left with the definite and firm impression that a mistake has been made. *Sanders v. State,* 738 S.W.2d 856, 857 (Mo. banc 1987)." *Amrine v. State,* 785 S.W.2d 531, 533 (Mo. banc 1990).

In his motion, the defendant alleged in very general terms eleven grounds for postconviction relief. The motion court, in careful and detailed findings, determined the defendant had established none of those grounds.

In argument in his brief the defendant contends trial counsel was ineffective because he did not inquire of Will concerning any injuries from Rodgers' attack, and did not produce Dr. Vantana as a witness to testify concerning medical treatment rendered Will the day following the incident. At the motion hearing, trial counsel explained that Will did not mention any injuries sustained in the occurrence in her written account of that incident. From a neighbor of the defendant, trial counsel had learned that any injuries Will may have had resulted from an assault by the defendant. Trial counsel did not develop the possibility of injuries to Will for fear the prosecuting attorney knew of the available testimony of the neighbor. Trial counsel concluded that development of such injuries should be avoided in order that the state could not present evidence to establish the defendant's violent disposition. Even accepting Will's testimony she had bumps on her head and received medical treatment, which the motion court was not required to do, trial counsel's choice of trial strategy does not constitute ineffective assistance of counsel. *State v. Anderson,* 785 S.W.2d 596 (Mo.App.1990).

The defendant also argues trial counsel should have called as witnesses the defendant's grandmother and her grandson to establish he was sober when they were with him at 11 p.m. Trial counsel did not consider this necessary because of the interval between 11 p.m. and the incident in

question. It was acknowledged the defendant did drink beer. The state presented no evidence he was intoxicated when the visitors arrived or when he stabbed Rodgers and Gilmore. Again, trial counsel's decision concerning trial strategy provides no basis for postconviction relief. *State v. Anderson,* supra.

The findings of the motion court are not erroneous. The denial of the defendant's 29.15 motion is affirmed.

FLANIGAN, P.J., and HOGAN, C.J., concur.