**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Jon Russell WHITE,
Defendant-Appellant.**

No. 51791.

Missouri Court of Appeals,
Eastern District,
Division Two.

Sept. 8, 1987.

Motion for Rehearing and/or Transfer
Denied Oct. 6, 1987.

Application to Transfer Denied
Nov. 17, 1987.

Holly Simons, Asst. Public Defender, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Carrie Francke, Sp. Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SMITH, Presiding Judge.

Defendant appeals from his convictions by a jury of two counts of first degree assault and one count of armed criminal action. Concurrent sentences of ten years were imposed on the two assault charges, and a consecutive five year term was mandated on the armed criminal action count. We affirm.

The incidents leading to the charges against defendant originated from two tire slashings. Originally the tires of Dwayne Hickman were slashed at a dance. Hick-man believed the culprit was Antoine Looney so in retaliation he and Eric Shivers slashed Looney's tire. Looney went to Beaumont High School, where Hickman was a student, to confront Hickman about the second incident. He was accompanied by five other youths including defendant. It was agreed that Hickman and Looney would go to Fairgrounds Park, across the street from the school, and fight one-on-one. When it appeared that Looney was prevailing some of Hickman's friends intervened to pull Looney off Hickman. This caused a series of satellite fights to break out. Defendant was not engaged in any of those. He, however, pulled out a .22 calibre pistol he was carrying and pointed it at a group of Hickman's friends, including Eric Shivers, and fired the pistol. Eric Shivers testified the gun was pointed directly at him, pointed somewhere between his face and chest. This was confirmed in a statement given by defendant to police. At trial defendant testified the group was advancing on him in a threatening manner and that he fired the pistol generally at the group without a specific target. No one was hit by this shot. Defendant testified that he then ran from the scene and during the course of his retreat handed the pistol to a friend. There was substantial evidence from the state to refute defendant's testimony that he was threatened or menaced. That evidence indicated that defendant without provocation decided to inject himself into the affray through the use of the gun.

During the general fighting Eric Shivers' brother Donald was wrestling with Andrew Moreland, one of the youths who accompanied defendant and Looney to the school. While on the ground wrestling, Donald Shivers was shot in the back. He saw defendant standing over him pointing the gun at him after he was shot. There was additional evidence that the shot was fired by defendant. The defendant denied shooting Donald Shivers and testified that shooting happened after he had given the gun to his friend.

The shot was nearly fatal. It pierced the left lower lobe of the lungs, and injured the

pulmonary artery branch of that lobe. It penetrated the left lower lobe bronchus. Upon arrival at the hospital, Donald was in hypovolemic shock and required an emergency thoracotomy for resuscitation. During that procedure large amounts of blood filled the trachea and endotracheal tube. The left lower lobe of the lungs was removed surgically. Approximately thirty minutes after the operation Donald developed an arrhythmia and had a cardiac arrest requiring a reopening of the incision and manual stimulation of the heart. Thereafter Donald had a series of medical problems and was in the hospital for a month. He eventually made a satisfactory recovery.

■ Defendant raises three issues on appeal. The first deals with the use of the treating physician as an expert witness who was not endorsed as a witness until well into the trial. The trial court expressed its unhappiness with the failure of the prosecution to endorse the witness but allowed the witness to testify. It is clear that the prosecution was in violation of its obligation to endorse witnesses and to disclose witnesses requested by the defense. Such a failure is reversible error only when a trial court has abused its discretion in allowing the testimony. *State v. Royal,* 610 S.W.2d 946 (Mo. banc 1981) [10–13]. Allowing such testimony following failure to disclose is only an abuse of discretion when it causes fundamental unfairness. *Id.* Fundamental unfairness is measured by whether the violation of discovery rules would have affected the result of the trial. *Id.*

■ Assault in the first degree requires an attempt to kill or knowingly causing or attempting to cause serious physical injury to another person. It is a Class B felony unless the actor inflicts serious physical injury on the victim in which case it becomes a Class A felony. Sec. 565.050, RSMo 1986. "Serious physical injury" means physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body. Sec. 556.061(26) RSMo 1986. The doctor testified only concerning the seriousness of the injury. Excluding all of the doctor's testimony it is uncontroverted that the physical injury here was "serious." Donald testified to the removal of a lobe of the lung and the disfiguring scar resulting from the emergency operation. The voluminous medical records[1] clearly demonstrate the seriousness of the injury and we have described Donald's condition and treatment based exclusively on those records. We are unable to find that prior disclosure of the intent to call the doctor would have in any way affected the outcome of the trial as to whether the injury sustained by Donald was serious. We find no fundamental unfairness and no error.

■ Defendant next contends that the trial court erred in failing to instruct on the lesser included offenses of first degree assault without serious physical injury or second degree assault. This contention is premised upon the conclusion that the question of serious physical injury was an important disputed issue in the case. What we have heretofore said largely disposes of this contention. An instruction on a lesser included offense is required only if the evidence of probative value could form a basis of acquittal of the higher offense and a basis for conviction of the lower. *State v. Olson,* 636 S.W.2d 318 (Mo. banc 1982) [1–4].

■ When a defendant denies the commission of the act charged and there is no evidence which mitigates the offense or provides a different version of it, instructing down is not required. *Id.* Here the state's evidence was that defendant without provocation shot Donald Shivers in the back inflicting the previously described injuries. Defendant's evidence was that he did not shoot Donald at all. The only evidence was that the injuries were very nearly fatal and resulted in impairment of the function of Donald's lungs and serious dis-

---

1. These were not received by the defense until Friday afternoon before the trial on Monday. Defendant does not raise as a point on appeal

the lateness of receipt of these records although he does complain in the argument section about the delay.

figurement. There was no evidence to the contrary. There was no evidence to form a basis for acquittal on the offense charged and conviction for a lesser offense. There was no error.

■ Defendant's final contention is that the court erroneously instructed the jury on his self-defense claim as it pertained to the assault on Eric Shivers. The court utilized MAI–CR2d 2.41.1 to submit the issue of self-defense. Specifically the court utilized the language of paragraph 2 of that instruction beginning "If the defendant was not the initial aggressor in the encounter...." This was a disputed issue of fact and was properly submitted. The state's evidence was that defendant drew the pistol without provocation and fired at Eric. If that version is true then defendant was the initial aggressor utilizing deadly force and was not entitled to acquittal on the basis of self-defense. *State v. Grier*, 609 S.W.2d 201 (Mo.App.1980) [3]. Defendant's evidence was that without provocation Shivers and his friends advanced on defendant in a threatening manner, that he thought they had weapons, and he fired to stop what he regarded as an imminent use of unlawful force against him. If that version is true then defendant was not the initial aggressor and was entitled to the benefit of self-defense. The fact of who was the initial aggressor was therefore for resolution by the jury and the instruction properly hypothesized that factual dispute. MAI–CR2d 2.41.1, Notes on Use 5.

■ The court, however, also utilized the language of paragraph 3 of that instruction hypothesizing the availability of self-defense if defendant was the initial aggressor but thereafter in good faith withdrew from the initial encounter. This hypothesis was not supported by the evidence. There was no evidence that defendant was engaged in any aggressive activities until he drew the pistol and fired at Eric Shivers.

We are unable, however, to find any prejudice to defendant. Essentially the instruction gave him an additional basis for self-defense to which he was not entitled. Defendant relies upon a series of cases of some age. *State v. Bartlett*, 359 Mo. 881,

224 S.W.2d 100 (1949); *State v. Herrell*, 97 Mo. 105, 10 S.W. 387 (1889); *State v. Moore*, 29 S.W.2d 148 (Mo.1930); *State v. Chambers*, 87 Mo. 406 (1885); *State v. Walker*, 196 Mo. 73, 93 S.W. 384 (1906). Those cases all involve instructions which denied to the defendant his right to self-defense if he was the initial aggressor. In each case the status of defendant as an initial aggressor was unsupported by the evidence and the instruction hypothesized as aggressive behavior that which was not sufficient legally to constitute the defendant an aggressor. Each took from the defendant his defense of justification upon the basis of facts unsupported by the record or legally insufficient to remove the defense. The instruction before us does not suffer that vice. There was ample evidence that defendant was the aggressor, and the instruction properly advised the jury that if he was the aggressor he could not have the benefit of self-defense. It improperly qualified that direction by reinstating that defense upon a finding of a fact not in evidence. The instruction could only have benefited defendant. The cases relied upon by defendant are clearly distinguishable from the one before us.

■ We only reverse for instructional error which misleads the jury to the prejudice of the defendant. *State v. Davis*, 608 S.W.2d 437 (Mo.App.1980) [6–8]. The instruction here did not do that; if anything it benefited the defendant.

Judgment affirmed.

DOWD and REINHARD, JJ., concur.