**STATE of Missouri, Respondent,**

v.

**Paul STEPTER, Appellant.**

No. 71875.

Supreme Court of Missouri, En Banc.

July 31, 1990.

Rehearing Denied Sept. 11, 1990.

650

Cheryl Rafert, St. Louis, for appellant.

William L. Webster, Atty. Gen., John M. Morris, William J. Swift, and Andrea Spillars, Asst. Attys. Gen., Jefferson City, for respondent.

COVINGTON, Judge.

A jury convicted Paul Stepter of first degree murder of Beverly Payton, § 565.020, RSMo 1986[1], and first degree assault of William Jackson, § 565.050. The

---

1. All statutory references are to RSMo 1986.

trial court sentenced Stepter as a prior offender to consecutive sentences of life imprisonment without parole and thirty years. Stepter timely filed a motion for post-conviction relief pursuant to *Rule* 29.-15. Following an evidentiary hearing, the trial court denied Stepter's *Rule* 29.15 motion. The Missouri Court of Appeals, Eastern District, affirmed the convictions and the denial of Stepter's *Rule* 29.15 motion and remanded for resentencing. This Court granted transfer to consider Stepter's claim of trial court error in refusing to submit to the jury a lesser included offense instruction of second degree murder. The conviction of first degree murder is reversed and remanded for new trial. The conviction of first degree assault is affirmed but remanded for resentencing. The denial of Stepter's *Rule* 29.15 motion is affirmed as it applies to the conviction of first degree assault.

Viewed in the light most favorable to the verdict, the evidence at trial established that William Jackson and his girlfriend, Beverly Payton, resided in a downstairs unit of a four family flat at 2343 University Avenue in the City of St. Louis, Missouri. On April 16, 1986, a group gathered in the Jackson/Payton apartment with Jackson and Payton: Richard Caldwell, an upstairs neighbor; Minnie, Caldwell's girlfriend; Stepter; Marsha Fraction, former girlfriend of Jackson and mother of Jackson's three children; Ronald Scott; and Gina G.

During the evening, Jackson and Payton borrowed Fraction's car to go to the laundromat. After returning, Payton and Stepter argued. Jackson separated them; Payton went into the living room and Stepter went into the kitchen. At various times, Caldwell, Minnie, Ronald Scott and Gina G. left the apartment. Stepter left the apartment at the same time Jackson walked Fraction to her car. Stepter and Jackson returned to the apartment at approximately the same time.

Jackson began to cook dinner for Payton's four-year-old son, Carl. Stepter was also in the kitchen. Payton remained in the living room. Jackson decided to go to

the store. He asked Payton whether she wanted anything. Payton replied that she wanted a six pack of beer and asked Jackson to come into the living room to get the money for it. When Jackson was about a foot away from Payton, she said, "Look." Jackson turned to see Stepter firing a pistol. Payton was hit and she fell. Jackson felt a pain in his elbow and ran for the door. As a result of a lock earlier broken, the door was blocked, so Jackson dived out the window. As he escaped, another bullet struck him below his right buttock.

As Jackson ran from the apartment, Caldwell asked him what had happened. Jackson replied that Stepter had shot him. Jackson ran three blocks to his brother's house. There, Jackson told his nieces that Stepter had shot him. Jackson did not mention to his nieces that Payton had been shot. By ambulance Jackson was taken to the hospital. He recovered after several surgeries.

Payton was struck by two bullets, one to the left forearm and one to the left shoulder. The bullet to the left shoulder passed into the chest, pierced a lung and punctured the aorta. Payton bled to death and was pronounced dead at the scene.

Approximately three months after the crime occurred, the police apprehended Stepter who, after pursuit for approximately twenty-five minutes, surrendered at gun point.

Stepter first contends that the trial court erred in refusing to instruct the jury on the lesser included offense of second degree murder. The trial court refused the instruction on the ground that there was no evidence to substantiate submission of a second degree murder instruction. In this regard the trial court erred.

■ A defendant may be convicted of an offense included in an offense charged in the indictment or information. § 556.046. An offense is so included when it is specifically denominated by statute as a lesser degree of the offense charged. § 556.046.1(2). Section 565.025.1 sets forth the lesser degree offenses of the homicide offenses. As a result of the legislature's adoption of § 565.025.1, it is clear which homicide offenses are lesser included in other homicide offenses. Murder in the second degree is a lesser degree offense of murder in the first degree. § 565.025.2(1).

Section 556.046.2 provides: "The court shall not be obligated to charge the jury with respect to an included offense unless there is *a basis for a verdict* acquitting the defendant of the offense charged and convicting him of the included offense." (emphasis added).

■ It becomes necessary then to determine the standard for evaluating whether there is a basis for both the acquittal of the charged offense of first degree murder *and* for conviction of the included offense of second degree murder. Only where there is a basis for a verdict of acquittal of the offense charged and a conviction of the lesser offense is an instruction on the lesser offense required. A jury has the ability to find the accused not guilty of first degree murder. As this Court observed in *State v. Griffin*, 756 S.W.2d 475, 485 (Mo. banc 1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 3175, 104 L.Ed.2d 1036 (1989), a second degree murder instruction tests a jury's belief of the crucial facts for a conviction of first degree murder. The question then is whether the evidence, in fact or by inference, provides a basis for both an acquittal of first degree murder *and* a conviction of second degree murder. The element at issue is deliberation.

The state contends that the argument between Payton and Stepter had ceased for a period of time during which Stepter left the apartment and returned. According to the state, this is conclusive of first degree murder and exclusive of second. Among other cases the state relies on *State v. White*, 790 S.W.2d 467 (Mo.App.1990). *White* involved a kidnapping and murder. At trial White denied that he committed the act. The trial court instructed on first degree murder and conventional second degree murder. The jury convicted White of first degree murder. On appeal, White contended the trial court erred in failing to instruct the jury on second degree felony murder. White asserted that the evidence

showed that one of the victim's hands was free of binding, that the victim obtained a gun, and that only then did he shoot her. The evidence showed, however, that the victim had been shot eleven times with four different guns. In *dictum*, citing *State v. White*, 738 S.W.2d 590, 592 (Mo.App.1987), the court of appeals noted that when a defendant denies committing the crime and no evidence "mitigates" the offense, no instruction of the lesser included offense is required. *White*, 790 S.W.2d at 472. The court of appeals rejected White's asserted error, however, on the basis of *State v. Griffin*, 756 S.W.2d 475, which holds that there is no error in failing to submit a felony second degree murder instruction in a case in which second degree is submitted. The state's reliance on both *White* opinions is misplaced.

Contrary to the state's contention, there is a way in which the jury could infer a different version of the events, one that supports a finding of the absence of deliberation. *See State v. Olson*, 636 S.W.2d 318, 321 (Mo. banc 1982); and *cf. State v. White*, 738 S.W.2d at 592. The evidence in the present case forms a "basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense," § 556.046.2, thus a basis for a second degree murder instruction.[2]

The evidence is contradictory and confusing, and presents a question of fact for the jury as to whether Stepter deliberated. Of the people gathered in the apartment the night of the shooting, three testified as to the events of the evening: Jackson, Caldwell and Fraction. Jackson testified at trial that Stepter left the apartment between the time of his argument with Payton and the shooting. Jackson told Detective Bender, however, according to Bender's testimony, that Stepter came back to the apartment "around 9:15 or 9:20 that night" and "began arguing with Beverly Payton." Jackson "told them to stop arguing and told Beverly to go into the living room." Although Detective Bender had no record of how much time passed, he testified that Jackson told him that "after she reached the fireplace that she called to [Jackson] and [Jackson] entered the living room," then Jackson heard gunshots. On cross-examination, Jackson, who testified before the detective, either denied or did not recall making these statements.

Richard Caldwell's testimony could support either Jackson's testimony or Detective Bender's. Leaving his own apartment for Jackson's apartment, in the same complex, Caldwell heard some arguing or loud talking. He remained in the Jackson/Payton apartment for approximately five minutes before returning to his apartment. Approximately fifteen minutes later, Caldwell testified, he heard "loud talking" and "somebody holler" immediately before he heard gunshots.

Marsha Fraction's testimony about the "arguments" was confusing. On direct examination, Fraction testified that she heard "some type of argument" between Payton and Stepter after Jackson and Payton returned from the laundromat. She also testified on direct examination, however, that "[n]othing really happened" when Payton returned from the laundromat. When asked whether the argument occurred before or after the trip to the laundromat, she said: "I can't exactly remember." Fraction then said she could only "vaguely" remember hearing an argument. Additionally, Fraction could not hear the exchange between Stepter and Payton well enough "to understand what they were saying."

Detective Herbert Riley testified that on the night of the shooting, he interviewed Fraction and that "she stated that while she was at the victim's house there were no arguments." On cross-examination Fraction denied making this statement.

■ In sum, the evidence could indicate not only that the argument between Payton and Stepter had ceased for a period of

---

**2.** Although jurists have disagreed over the issue of whether the "basis" may be found in disbelief of testimony, *see, e.g., State v. Murray*, 744 S.W.2d 762, 777–78 (Mo. banc 1988) (Blackmar, J., dissenting), *cert. denied*, 488 U.S. 871, 109 S.Ct. 181, 102 L.Ed.2d 150 (1988); *Olson*, 636 S.W.2d at 321; *State v. Achter*, 448 S.W.2d 898, 900 (Mo.1970), the evidence in the present case does not require decision of that issue.

time during which Stepter left the apartment and returned, from which the jury could infer deliberation, but also that either no argument occurred or that, if there was an argument, it began shortly before the shooting. As a consequence, the evidence could support a finding of the presence of, or the absence of, deliberation. Under the evidence, the question was for the jury to determine as a matter of fact, not for the trial court to rule as a matter of law.

The state claims that, even if there was evidence to support the submission of a second degree murder instruction, the tendered instruction was properly refused because the instruction contained a mental state that is used only upon request of the state. The state ignores the fact that the trial court refused Stepter's instruction not on the basis of improper tender of a mental state used only upon request of the state, but on the ground that "[T]here's no evidence to substantiate it." Following the trial court's stated basis for refusing to submit the instruction, Stepter asserted in his motion for new trial that the trial court erred in not allowing the jury to determine whether Stepter had deliberated on the murder of Beverly Payton. This allegation set forth with sufficient particularity Stepter's ground for allegation of trial court error. The point was preserved for appeal.

Perhaps in an attempt to evoke hysteria, the state suggests that to require submission of a second degree murder instruction in this case is tantamount to reverting to an automatic submission rule. The state is incorrect. Automatic submission has been soundly rejected in *State v. Hill*, 614 S.W.2d 744, 749 (Mo.App.1981), cited with approval by this Court in *State v. Olson*, 636 S.W.2d 318, 322 (Mo. banc 1982). The Court today remains persuaded that trial courts shall not be obligated to automatic submission. The holding of this case is based upon the fact that there is "a basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense," § 556.046.2, in that the evidence as recited presented a question of fact for the jury as to whether Stepter deliberated. Because the evidence in this case did present that question of

fact and the defendant timely requested a second degree instruction, the trial court erred in failing to submit a second degree murder instruction to the jury. The conviction of first degree murder is reversed and remanded for a new trial.

As a consequence of reversal and remand in the first point, Stepter's remaining points are addressed only as they relate to the conviction of first degree assault.

Stepter claims that there was insufficient evidence to support his conviction in view of inconsistencies between testimony of various witnesses.

 In determining sufficiency of the evidence, this Court accepts as true all evidence, whether direct or circumstantial, which tends to prove a defendant guilty, together with all reasonable inferences supportive of the verdict. *State v. Brooks*, 618 S.W.2d 22, 23 (Mo. banc 1981). It is not a court's function to weigh the evidence; it is the jury's function to determine beyond a reasonable doubt that a defendant is guilty of the offense charged. *Id.* It is solely within the province of the jury to determine the credibility of witnesses. *Id.* The jury is free to believe the testimony of one witness and reject inconsistencies raised by testimony of other witnesses. *State v. Jackson*, 608 S.W.2d 420, 421 (Mo. 1980).

 The state presented direct evidence of Stepter's guilt. Jackson testified that it was Stepter who shot him. The state offered other circumstantial evidence. Several witnesses testified that Stepter was in the Jackson/Payton apartment prior to the shooting. Caldwell testified that he heard people arguing in the Jackson/Payton apartment and then several gunshots. Caldwell testified that he saw Jackson running down the street immediately after hearing the argument and gunshots, that he asked Jackson what was wrong, and that Jackson replied that Stepter had shot him. The evidence supports the guilty verdict.

 Stepter alleges that the trial court erred in sustaining the state's objection to

a portion of closing argument where his counsel said:

> What about the bullets? Let's just think about all of the questions that we have got here to think about, and that you—

A gun was not recovered and no comparison of bullets was made. "[T]he state is not bound to gather and present all physical evidence conceivably germane to its case in chief." *State v. Schneider,* 736 S.W.2d 392, 402 (Mo. banc 1987), *cert. denied,* 484 U.S. 1047, 108 S.Ct. 786, 98 L.Ed.2d 871 (1988), quoting, *State v. Simpson,* 611 S.W.2d 556, 560 (Mo.App. 1981). Further, "the state is not required to account for its failure to gather or present such evidence." *Id.* Thus, in closing argument, the defense was not permitted to draw an adverse inference from the state's failure to present evidence regarding the bullets used to shoot Jackson and Payton. The trial court did not err in sustaining the prosecutor's objection.

■ In a related complaint, Stepter asserts that the trial court denied his rights to due process and a fair trial as guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution and article I, section 10, of the Missouri Constitution. Stepter claims that he was discriminated against in that the trial court precluded his counsel's adverse inference argument yet, in an analogous situation, allowed the state to argue an adverse inference from his failure to present evidence. Because Stepter failed to preserve this claim in his motion for new trial, the review is for plain error. *Rule* 29.12(b). Plain error exists only when the error is so substantial that, without correction, manifest injustice or a miscarriage of justice will result. *State v. McMillin,* 783 S.W.2d 82, 95 (Mo. banc 1990).

■ There is no plain error. During closing arguments, Stepter's counsel argued that Jackson did not dive through the window and that the spot of blood on the carpet was not Payton's. Additionally, Stepter's counsel noted the state's failure to call Ronald Scott and Gina G. as witnesses. In rebuttal, state's counsel noted that the defense had the power to subpoena witnesses and to present any existing evidence. The state's remarks were in proper retaliation to those made by defense counsel. *State v. Wood,* 596 S.W.2d 394, 403 (Mo. banc), *cert. denied,* 449 U.S. 876, 101 S.Ct. 221, 66 L.Ed.2d 98 (1980). The trial court correctly allowed the state to respond to defense counsel's arguments.

Stepter asserts that the trial court erred in allowing the testimony of Officer Daniel Saitz. Stepter first argues the trial court should have excluded the testimony because Saitz was not endorsed as a witness on the indictment. He was endorsed after the trial began.

■ The claim is not preserved, thus will be reviewed for plain error. Although Stepter asserts that the endorsement issue was raised in a pretrial motion to compel discovery, the sole allegation contained in the pretrial motion that could possibly pertain is a general allegation that the state failed to comply with *Rule* 25.03. At trial, defense counsel objected to Saitz' testimony on the ground that Saitz had not been involved in the apprehension of Stepter. To preserve a claim of error, counsel must object with sufficient specificity to apprise the trial court of the grounds for the objection. *State v. Carr,* 499 S.W.2d 788, 790 (Mo.1973).

■ Trial courts possess discretion to permit late endorsement of witnesses. *Rule* 23.01(f). Allowing testimony following failure to disclose is an abuse of discretion only when it causes fundamental unfairness. *State v. White,* 738 S.W.2d at 592, citing, *State v. Royal,* 610 S.W.2d 946, 951 (Mo. banc 1981). Four factors have been used to determine whether a trial court abused its discretion by allowing the testimony of a late-endorsed witness: (1) whether the defendant waived the objection; (2) whether the state intended surprise or acted deceptively or in bad faith, with intention to disadvantage defendant; (3) whether in fact defendant was surprised and suffered any disadvantage; and (4) whether the type of testimony given might readily have been contemplated. *State v.*

*Strawther,* 476 S.W.2d 576, 579–80 (Mo. 1972); *see also State v. Stokes,* 638 S.W.2d 715, 719–20 (Mo. banc 1982), *cert. denied,* 460 U.S. 1017, 103 S.Ct. 1263, 75 L.Ed.2d 488 (1983).

▇ Stepter does not assert that the prosecutor acted deceptively or with intent to surprise. Rather, defense counsel revealed in her objection that she was not surprised. She correctly anticipated that the nature of Saitz' testimony would be the pursuit prior to Stepter's capture. Defense counsel thought the police chase involved Detective Brown and not Officer Saitz. The type of testimony given by Saitz was obviously correctly anticipated by Stepter's counsel. It cannot be said that the prosecutor's failure to endorse the witness and his resulting testimony had a decisive effect on the jury and affected the outcome of the trial. There was no fundamental unfairness and no manifest injustice.

▇ Stepter challenges the substance of Saitz' testimony that defendant was found hiding in a field and was apprehended at gunpoint after a twenty-five minute chase. Stepter asserts that Saitz' testimony was irrelevant and prejudicial and constituted inadmissible evidence of other crimes. Stepter is incorrect. Evidence of flight is admissible to show a consciousness of guilt contrary to any theory of innocence. *State v. Rodden,* 728 S.W.2d 212, 219 (Mo. banc 1987). The trial court did not err in allowing Saitz' testimony regarding flight and arrest.

▇ Stepter next alleges that the trial court erred in sentencing him as a prior offender pursuant to § 558.019.2. Stepter is correct. Effective on January 1, 1987, § 558.019.2 requires a defendant convicted as a prior offender to serve forty percent of his sentence. The crimes committed by Stepter occurred on April 16, 1986. Section 558.019.2 is consequently an *ex post facto* law as applied to Stepter. *State v. Lawhorn,* 762 S.W.2d 820, 826 (Mo. banc 1988). The conviction of first degree assault is remanded to the trial court for resentencing.

▇ Stepter appeals the trial court's denial of his *Rule* 29.15 motion after an evidentiary hearing. Review is limited to a determination of whether the findings, conclusions and judgment of the motion court are clearly erroneous. *Rule* 29.15(j); *Sanders v. State,* 738 S.W.2d 856, 857 (Mo. banc 1987). Findings and conclusions are deemed clearly erroneous only if a review of the entire record leaves the appellate court with the definite and firm impression that a mistake has been made. *Sidebottom v. State,* 781 S.W.2d 791, 795 (Mo. banc 1989). To prove ineffective assistance of counsel, movant must show that counsel's performance was deficient and that the deficiency prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The deficiency is shown by counsel's acts or omissions which, in light of all the circumstances, were "outside the wide range of professionally competent assistance." *Id.* at 690, 104 S.Ct. at 2066. Movant must also overcome the presumption that counsel's challenged acts or omissions were sound trial strategy. *Id.,* citing, *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955). Counsel is presumed competent. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064.

▇ Prejudice is shown by proof that, but for counsel's unprofessional errors, there was a reasonable probability that the result would have been different. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. Prejudice is not presumed from a showing of deficient performance of counsel, but must be affirmatively proved. *Id.* at 693, 104 S.Ct. at 2067. It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding, *id.;* rather, defendant must show that there is a reasonable probability that, but for the errors by counsel, the fact finder would have had a reasonable doubt respecting punishment. *Id.* at 694–95, 104 S.Ct. at 2068–69. If it is simpler to dispose of a claim of ineffectiveness on the ground of lack of sufficient prejudice, that course should be followed. *Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069. "[T]here is no reason for a court ... to address both

components of the inquiry if the defendant makes an insufficient showing on one." *Id.* "The movant has the burden of proving his grounds for relief by a preponderance of the evidence." *Rule* 29.15(h). *Sidebottom,* 781 S.W.2d at 796.

■■■ Stepter asserts numerous claims of ineffective assistance of counsel. He first alleges that counsel was ineffective in failing to call Royce Madison as an alibi witness and in failing to present the defense of self-defense. Stepter testified at the evidentiary hearing that he wanted to present an alibi defense to the shooting of Payton and the defense of self-defense to the shooting of Jackson. Stepter's theory was that he shot Jackson in self-defense at 7:30 p.m. but was with Madison at 9:30 p.m. when Payton was shot. Stepter testified that trial counsel believed these defenses were inconsistent because the state's evidence would show that the shootings occurred at the same time. Trial counsel testified that the self-defense theory would not have been viable because it required Stepter to testify contrary to Stepter and counsel's earlier decision that Stepter would not testify. There exists a strong presumption that counsel made all significant decisions in the exercise of her reasonable professional judgment. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. Strategic choices made after a thorough investigation of the law and facts which are relevant to plausible options must be viewed as of the time of counsel's conduct. *Id.* at 690, 104 S.Ct. at 2065. The motion court found, based on all the evidence presented, including Stepter's, that the defenses of alibi and self-defense were clearly inconsistent. Defense counsel's choice of strategy was reasonable. The point is denied.

■■■ Stepter next claims that counsel was ineffective for failing to view the crime scene and for failing to obtain and present at trial a diagram of the victims' entire residence. At trial, defense counsel used and admitted into evidence a diagram of the living room of the victims' apartment. This diagram was based upon a drawing furnished by Stepter. At the evidentiary hearing, Stepter presented a diagram of the entire building prepared by him, which he asserted would impeach Jackson's testimony regarding the location of Stepter and the victims when the shooting occurred. The motion court ruled that, because both the photographs of the scene and defense counsel's diagram were admitted at trial, counsel's failure to view the crime scene or to obtain a scale drawing of the entire residence was not significant. The motion court's ruling was not clearly erroneous. Counsel vigorously cross-examined Jackson using the diagram admitted at trial. Moreover, Stepter failed to show through independent testimony that the diagram he prepared was accurate or that it would have shown Jackson's testimony to be incorrect.

■■■ Stepter next claims that counsel was ineffective in failing to exclude the testimony of Richard Caldwell after he failed to appear at several depositions scheduled by defense counsel. Counsel testified that she was assured by the prosecutor that Caldwell's testimony would not differ from his statement in the police report. Stepter alleges, however, that Caldwell's testimony differed from the police report in that he testified at trial that Jackson exclaimed that Stepter shot him. Thus, Stepter argues, the failure to exclude the testimony prejudiced him.

Stepter fails to show prejudice. He does not show that Caldwell's testimony would have been excluded upon defense counsel's motion. Whether Caldwell's testimony regarding Jackson's statement had a decisive effect on the jury in the face of Jackson's direct testimony that Stepter had shot him is also highly questionable. As the motion court noted, Caldwell was not an eyewitness to the incident and his testimony was brief and undamaging. The motion court's conclusion that Caldwell's testimony was not prejudicial was not clearly erroneous.

■■■ Stepter alleges that defense counsel was ineffective for failing to impeach Caldwell regarding Caldwell's drug addiction, use of aliases, and inconsistent statements. Stepter's allegations are without merit. The record reveals that trial coun-

sel did cross-examine Caldwell on the use of an alias. Stepter does not show that Caldwell's alleged drug addiction would have been relevant or admissible, nor does he reveal the content of the inconsistent statements he asserts counsel should have employed to impeach Caldwell. Stepter's allegation is meritless.

 Stepter contends that counsel was ineffective in failing to obtain blood samples from the victim's apartment. Stepter asserts that tests may have revealed that the blood on the carpet was Jackson's rather than Payton's, thus refuting Jackson's testimony describing where in the apartment he was shot. Counsel was not ineffective in this regard. She testified that she deliberately elected not to obtain samples and tests so that she could attempt to draw inferences favorable to Stepter from the state's failure to test the blood. Hers was a reasonable strategic decision.

The conviction of first degree murder is reversed and remanded for new trial. The conviction of first degree assault is affirmed but remanded for resentencing. The denial of Stepter's *Rule* 29.15 motion for post-conviction relief is affirmed as it applies to the conviction of first degree assault.

BLACKMAR, C.J., and ROBERTSON, RENDLEN and HOLSTEIN, JJ., concur.

HIGGINS, J., dissents in separate opinion filed.

BILLINGS, J., dissents and concurs in separate dissenting opinion of HIGGINS, J.

HIGGINS, Judge, dissenting.

With due respect, I dissent from the majority's reversal of the judgment in this case, particularly appellant's conviction for first degree murder for want of an instruction on murder, second degree. I do so because I cannot agree with the majority's premise that "[t]he evidence is contradictory and confusing, and presents a question of fact for the jury as to whether Stepter deliberated." I do agree with the explication made by the Honorable Gary M. Gaertner for the Missouri Court of Appeals, Eastern District, and adopt it in support of this dissent:

In his first point on appeal defendant argues that the trial court erred in refusing to instruct the jury on the lesser included offense of second degree murder. The court ruled that the evidence did not support giving an instruction on second degree murder. Second degree murder is a lesser included offense of first degree murder. *See* RSMo § 565.025 (1986). The basic difference between first and second degree murder is the presence of deliberation in first degree murder. *Compare* RSMo § 565.020.1 (1986) *and* RSMo § 565.021.1(2) (1986). An instruction on a lesser included homicide offense will generally not be given unless there is a basis for acquitting the defendant of the greater offense and convicting of the lesser offense. RSMo § 556.046.2 (1986); *see also* Supplemental Notes on Use MAI–CR3d 313–3.

The record in this case is devoid of an evidentiary basis for convicting defendant of second degree murder. The only evidence presented at trial revealed that the argument between Payton and defendant had ceased for a period of time during which defendant left the apartment and returned; thus showing deliberation. Defendant's theory of defense was that he did not kill Payton or assault Jackson and that he was not there when the shooting occurred. He did not argue absence of deliberation or present any evidence to support lack of deliberation. The possibility that a jury may disbelieve the State's evidence regarding deliberation or decline to draw permissible inferences does not entitle defendant to an instruction otherwise unsupported by the evidence. *See State v. Thompson,* 695 S.W.2d 154, 160 (Mo.App. 1985). There was no evidence from which a reasonable jury could have concluded that one of the essential elements of second degree murder, *i.e.,* lack of deliberation, was present. *See Williams v. Armontrout,* 679 F.Supp. 916, 925 (W.D.Mo.1988). The court did not err in failing to instruct the jury on a crime for which there was no evidence presented that the defendant committed. *State v. Pettis,* 655 S.W.2d 513,

514–15 (Mo. banc 1983); *State v. Lett*, 715 S.W.2d 557, 560 (Mo.App.1986).

I would affirm the judgment in this case including the conviction for murder, first degree, subject to remand for resentencing on the conviction for first degree assault.