STATE of Missouri, Plaintiff–
Respondent,

v.

Clay YOUNG, Defendant–Appellant.

Clay YOUNG, Movant,

v.

STATE of Missouri, Respondent.

Nos. 58910, 61304.

Missouri Court of Appeals,
Eastern District,
Division Two.

Dec. 8, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
Jan. 21, 1993.

---

3. These two cases involve our repeat offender statute, § 558.021 RSMo 1986, which is not totally dissimilar to § 577.023.

543

Deborah B. Wafer, St. Louis, for appellant.

William L. Webster, Atty. Gen., Robert Alan Kelly, Asst. Atty. Gen., Jefferson City, for respondent.

PUDLOWSKI, Judge.

This is a consolidated appeal from the jury trial of Appellant Clay Young for the murder of a four year old girl. A jury found appellant guilty of second degree murder and armed criminal action. Appellant was sentenced to a life term and a consecutive three year term, respectively, on these charges. Appellant's Rule 29.15 motion for post conviction relief was denied without an evidentiary hearing. We affirm.

On December 23, 1989, a group of people were gathered at the home of appellant, 68 year old Clay Young, in the City of St. Louis. The group included appellant's girlfriend, Velma Booker, Velma's daughter and son, Pauline Williams and Terrence Booker, and Pauline's boyfriend, Terry Channel. Velma's car had stalled in front of appellant's house in the cold weather on the previous day. Velma hoped to get her car started so she could take Pauline, who was sick, to the hospital.

Throughout the morning appellant and Terry Channel were drinking. At appellant's suggestion, Velma called Pervis Vinson, a friend of appellant, for help with her car. Pervis came to appellant's house and confirmed that Velma's car needed a new battery. Pervis and Terrence Booker went to the auto parts store that Pervis' family owned to get a battery for Velma's car. In the meantime, Velma and Pauline remained at appellant's house. Appellant and Terry

Channel continued drinking homemade wine and 1½ pints of gin that Terry went out to buy.

While the group waited for Terrence Booker and Pervis to return, Pauline's friend Angela Hornbeak arrived at appellant's home to see Pauline. Angela parked her car directly behind Velma's car on the same side of the street as appellant's house. The driver's side was in front of and faced the house. Leaving the car running, Angela and her four year old daughter Tiffany walked up to appellant's front door. Angela spoke with Pauline and Terry Channel in the doorway about whether Pauline needed a ride to the hospital.

During this conversation, appellant made verbal and physical advances toward Angela in front of the others. Angela ignored appellant even though he was "saying how nice looking she was and how nice she was built and he wished that his woman was built like [her]." When appellant tried to touch Angela, Pauline and Terry Channel stepped between them. Velma observed appellant's repeated attempts to touch Angela and became embarrassed. She asked appellant to stop his remarks and advances toward Angela. Velma walked over to Clay and pushed him, and he pushed her back. Pauline intervened telling appellant to stop pushing her mother. Appellant became belligerent and ordered everyone out of his house declaring, "All you son of a bitches get out of my house."

Everyone except for appellant left the house and went to Angela's car to wait for Pervis and Terrence Booker. Velma, Pauline, Terry, Angela and Tiffany all crammed into Angela's running car to keep warm and out of the bitter cold. When Pervis and Terrence returned with the new battery, Velma and Terry got out to help them fix Velma's car. Angela was still sitting in the front seat of her car, and Pauline was in the back seat playing with Tiffany, who was on her right knee.

After Pervis installed the battery, appellant came out of his house and paid Pervis fifteen dollars for fixing the car. Appellant kept trying to help Pervis but only interfered. In addition to aggravating Pervis, appellant urinated on himself and was "out of control." Appellant walked back into his house as Pervis finished Velma's car and drove away.

Once inside appellant grabbed his loaded .22 caliber rifle that was equipped with a scope. Appellant opened his front door, stood in the doorway and aimed the rifle out the partially opened screen door. Velma yelled at appellant to stop. One shot was fired. Terry Channel and Terrence Booker heard the shot and saw appellant holding the gun at his shoulder and aiming at Angela's car. The scene turned chaotic. Terry, Terrence and Pauline got down on the ground. Velma ran door-to-door seeking help. Angela grabbed Tiffany and began running for cover. As she ran, she noticed blood all over Tiffany's snow suit. Tiffany had been shot through the neck. Angela ran back to the car with Tiffany and drove off to the hospital. On the way to the hospital Angela had an accident. She flagged down a driver who gave them a ride to Children's Hospital. Tragically, Tiffany Hornbeak died as a result of the gunshot wound 69 days later.

After appellant fired the single fatal shot, he simply stood at the door for a moment. Appellant went back in his house and closed the doors. Velma obtained the help of Willie Percy, a police officer, who lived across the street from appellant. More police officers quickly responded to Percy's call for assistance. Once on the scene, the police arrested appellant in his house. Appellant signed a Consent to Search form authorizing a full police search. The police retrieved a small, scopeless air-rifle from appellant's bedroom closet. At the police station, witnesses agreed that this was not the gun they saw appellant fire. After a further search of appellant's house, the police found the .22 caliber scoped rifle behind an old screen door stored in appellant's basement. The witnesses positively identified this second rifle as the gun appellant shot at Angela's car.

At trial, appellant testified that he had gone to the front door with his gun and "didn't see no one so when I turned to go back in the house it shot, fired." Appellant

also stated that he did not intend to shoot anybody. On July 11, 1990, the jury convicted appellant of armed criminal action and murder in the second degree for the shooting death of four year old Tiffany Hornbeak. Following this conviction, appellant filed his notice of direct appeal on August 27, 1990. On August 14, 1991, appellant filed a *pro se* motion for post-conviction relief pursuant to Rule 29.15. Counsel was appointed and filed an amended motion on October 16, 1991. On November 18, 1991, the motion court entered its findings, conclusions and order denying appellant's request for post-conviction relief without an evidentiary hearing.

Appellant raises one point with six subpoints on appeal.[1] Appellant argues that the motion court erred in denying appellant's post-conviction motion or, in the alternative, failing to grant an evidentiary hearing because that violated his right to due process of law as guaranteed by the Fourteenth Amendment of the United States Constitution and Article I, Section 10 of the Missouri Constitution. Appellant contends that he timely requested an evidentiary hearing and alleged facts not refuted by the record which showed prejudice to movant and were sufficient as a matter of law to require a new trial or, in the alternative, a hearing. Appellant asserts, in five subpoints, instances of ineffective assistance of counsel that prejudiced movant.

■ Appellate review of the denial of a post-conviction motion is limited to a determination of whether the findings and conclusions of the motion court are "clearly erroneous." *State v. Vinson,* 800 S.W.2d 444, 448 (Mo. banc 1990). Findings and conclusions are clearly erroneous only if, after review of the entire record, the court is left with the definite and firm impression that a mistake has been made. *Id.* Furthermore, in order for a Rule 29.15 movant

to be entitled to an evidentiary hearing, he must allege facts, not mere conclusions, which would warrant relief; the allegations must not raise matters refuted by the record; and the matters complained of must have resulted in prejudice to movant's defense. *Tyler v. State,* 787 S.W.2d 778, 779 (Mo.App.1990).

■ Additionally, in order to prevail on a claim of ineffective assistance of counsel, a movant must establish that his attorney's performance was deficient, and that the deficient performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Both the performance prong and the prejudice prong must be satisfied for movant to prevail on an ineffective assistance of counsel claim. *Sanders v. State,* 738 S.W.2d 856, 857 (Mo. banc 1987).

■ Deficient performance is shown by counsel's acts or omissions which, in light of all the circumstances, were outside the wide range of professionally competent assistance. *State v. Stepter,* 794 S.W.2d 649, 656 (Mo. banc 1990). Movant must also overcome the presumption that counsel was competent and the challenged acts or omissions were sound trial strategy. *Id.*

■ Prejudice is shown by proof that, but for counsel's unprofessional errors, there was a reasonable probability that the result would have been different. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. Prejudice is not presumed from a showing of deficient performance of counsel, but must be affirmatively proved. *Id.* at 693, 104 S.Ct. at 2067. *Stepter,* 794 S.W.2d at 656. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland,* 466 U.S. at 693, 104 S.Ct. at 2067.

1. Although this is a consolidated appeal, appellant has abandoned any direct appeal of his conviction and sentence by choosing not to brief any such points on appeal. *State v. Gilmore,* 617 S.W.2d 581, 582 (Mo.App.1982). Furthermore, by failing to set forth any argument on subpoint (F), that trial counsel failed to anticipate that the state would rebut the defense evidence of appellant's good character with evidence of his lengthy arrest record and poor character, appellant has abandoned and waived that subpoint. *See State v. Mitchell,* 554 S.W.2d 581, 583 (Mo.App.1977).

■ There is no need for a court to address both prongs of the test if the defendant makes an insufficient showing on one. *Stepter*, 794 S.W.2d at 656–57. Finally, the movant has the burden of proving grounds for relief by a preponderance of the evidence. Rule 29.15(h). *Stepter*, 794 S.W.2d at 657.

■ Appellant's first claim of ineffective assistance of counsel is trial counsel's failure to object to evidence of the unrelated gun and ammunition. Appellant argues that the air-rifle and shells were unrelated to this case, had no legitimate probative value, and were prejudicial to his defense. Appellant cites several cases for the proposition that failure to object to the admission of guns wholly unrelated to the crime charged constitutes ineffective assistance. *Adams v. State*, 677 S.W.2d 408 (Mo.App. 1984); *State v. Charles*, 572 S.W.2d 193 (Mo.App.1978); and *State v. Holbert*, 416 S.W.2d 129 (Mo.App.1967).

■ Initially, appellant is not entitled to an evidentiary hearing on this issue because his pleadings before the motion court were conclusory and did not state factual assertions of how appellant was prejudiced by the admission of the gun and ammunition. Moreover, where the conduct involves the attorney's use of reasonable discretion in a matter of trial strategy, such as whether to object to evidence, ineffective assistance of counsel will not lie. *State v. White*, 798 S.W.2d 694, 698 (Mo. banc 1990). The failure to object does not rise to the level of ineffective assistance of counsel unless the movant has suffered a substantial deprivation of the right to a fair trial. *Chambers v. State*, 781 S.W.2d 116, 118 (Mo.App.1989).

Appellant did not suffer a substantial deprivation of the right to a fair trial by trial counsel's failure to object. The decision not to object was a reasonable exercise of trial strategy because the evidence of the air-rifle and ammunition was properly admissible. It was highly probative in corroborating the witnesses testimony regarding the identity of the actual gun used by appellant. By hearing each of the eyewitnesses testify that he or she clearly recognized that the air-rifle was not the gun used in the shooting, the jury could give more weight to the later identifications of the gun that appellant did fire from his doorway. Furthermore, this evidence reinforced the witnesses testimony that they actually saw appellant aiming a specific rifle, and refuted any inference that they just heard a shot and assumed it came from appellant's house. The evidence of the air-rifle was not unconnected to this case and had "legitimate probative value in establishing defendant's guilt of the offense on trial." *Holbert*, 416 S.W.2d at 133. Trial counsel's failure to object to the evidence of the air-rifle and ammunition, therefore, was not ineffective assistance.

■ Appellant next claims that his trial counsel was ineffective for not objecting to the prosecutor's references to appellant's "aliases." In attempting to determine if any of the venirepersons were acquainted with appellant, the prosecutor asked during voir dire if anyone recognized other names the defendant used. The prosecutor stated, "The defendant is Clay Young. He also goes by or has gone by several other names, Columbus Young, Leroy McGee, Leroy Smith or Casey Davis. Does anybody on the panel feel they might know the defendant?" Appellant argues that reference to aliases normally carries an unfavorable connotation and may necessitate the granting of a new trial. *State v. Varner*, 329 S.W.2d 623, 626 (Mo.1959).

It should be noted that the prosecutor never used the word "alias" during voir dire or the entire trial. This semantical distinction is important given appellant's reliance on *Varner*. There, the Supreme Court explained that the use of " 'alias,' *the word*, normally carries an unfavorable connotation and its improper or unfair use may necessitate the granting of a new trial." 329 S.W.2d at 626 (emphasis added).

Viewed within the totality of the circumstances, *State v. Berry*, 679 S.W.2d 868, 874 (Mo.App.1984), the reference to appellant's other names was not improper or unfair. It was merely an attempt to determine whether any venirepersons might be prejudiced or biased by being acquainted with appellant. Trial counsel's decision not to object was a reasonable exercise of his discretion within the realm of trial strategy. No prejudice flowed from this limited

mention of appellant's use of other names, therefore, appellant's claim of ineffective assistance fails and no evidentiary hearing was warranted.

■ Appellant argues, in his third sub-point, that his trial counsel was ineffective for failing to object to the prosecutor's use of a hypothetical to predispose the jury to convict and reject appellant's defense. Appellant cites excerpts from the State's voir dire wherein the prosecutor is attempting to determine if the panel can understand and apply the doctrine of transferred intent. The prosecutor put forth the following hypothetical:

Now say an individual, we'll just call him Joe, decides that he wants to kill another person by the name of Bob, okay. So Joe decides he's going to kill Bob and he's going to kill Bob by shooting him. Okay, Joe decides he has the intent that he's going to kill Bob by shooting him. He goes out there and he has a gun and Bob's down there and there's some other people around Bob, and Joe takes that gun and he shoots at Bob.

Remember he intended to kill Bob, but he missed Bob and he hits someone else, Jane. Okay, he hits Jane and she dies from that gunshot wound. Do you understand that even though Joe intended to kill Bob, the fact that he killed Jane when he intended to kill Bob is enough under the law to prove that he intended to kill Jane?

\* \* \*

You understand that the law does not require that Joe have the intent to kill Jane. It's enough that he have the intent to kill Bob, his intended victim, do you understand that?

\* \* \*

And the fact that he shot and killed Jane, he's still guilty of murder, of having that intent even though he really meant to kill Bob.

\* \* \*

Anybody over here have a problem with that, feels that, well, Joe really meant to kill Bob and if he killed Jane, that's not murder, that was like an accident or something? Does anybody feel that way?

Appellant asserts that through this hypothetical the prosecutor gave the venire misinformation that in a transferred intent case, intent need not be proved and, in effect, could be presumed because the prosecutor did not mention that the underlying intent must be proved.

Appellant's argument lacks merit because the prosecutor's hypothetical was not meant to set forth each element of the offense, nor did he infer the jury could presume the underlying criminal intent. Appellant would have us read the selected portions of the voir dire in isolation from the prosecutor's explicit statements that the defense counsel was not required to prove anything and that the only burdens in the case were squarely on the state to prove the elements beyond a reasonable doubt. Without reproducing an extended portion of the transcript, the tenor of the hypothetical and the subsequent intercourse with the venire panel was whether the panel understood and had any bias against the concept of transferred intent.

■ Counsel is afforded much latitude in probing the venire panel to determine preconceived prejudices that would prevent them from following the court's instructions. *State v. White*, 699 S.W.2d 19, 21 (Mo.App.1985). The prosecutor's attempt to determine if any venireperson would be unable to follow the law applicable to the case was not improper and did not commit the individuals to a particular course of action. *See State v. Murray*, 744 S.W.2d 762, 770 (Mo. banc 1988). Any objection to this inquiry would have been meritless. It is not ineffective assistance of counsel to fail to raise a meritless objection. *Sidebottom v. State*, 781 S.W.2d 791, 799 (Mo. banc 1989). An evidentiary hearing was properly denied because appellant's argument was refuted by the record.

■ Appellant next argues that his trial counsel was ineffective in failing to raise a *Batson* challenge. Appellant's brief cites general case law pertinent to *Batson* claims. *Powers v. Ohio*, 499 U.S. ——, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); *State v. Antwine*, 743 S.W.2d 51 (Mo. banc 1987); and *State v. Robinson*, 811 S.W.2d 460

(Mo.App.1991). It also cites an Alabama federal district court case finding ineffective assistance because of an attorney's failure to raise a *Batson* claim. *Jackson v. Thigpen*, 752 F.Supp. 1551 (N.D.Ala.1990). However, appellant has failed to make any argument as to how this omission of his trial counsel prejudiced his defense.

In order to prevail on an ineffective assistance claim, appellant has the burden of affirmatively establishing prejudice by a preponderance of the evidence. *Stepter*, 794 S.W.2d at 656. To satisfy the prejudice prong, appellant must show a reasonable probability that, but for trial counsel's decision not to raise a *Batson* claim, the result of his trial would have been different. *See Id.* Appellant has not attempted to make such a showing, nor has he even alleged that the prosecutor's peremptory strikes were the result of purposeful racial discrimination, notwithstanding the fact that eight of the jurors were the same race as appellant. This meritless claim neither entitles appellant to relief nor an evidentiary hearing.

In his fifth subpoint, appellant argues trial counsel was ineffective with regard to the intoxication defense and admission of evidence of appellant's alcoholism. Appellant contends that trial counsel failed to adequately research the law and prepare a legally sufficient defense. Appellant asserts that had trial counsel done so, he would have discovered that intoxication was not a defense to the crimes charged. *See State v. Tate*, 733 S.W.2d 45 (Mo.App. 1987). Appellant maintains that he was prejudiced because the testimony portrayed him as an alcoholic and a miscreant. Appellant further insists that a reasonably competent attorney would have moved prior to trial to exclude this evidence and objected to this evidence at trial.

The motion court conceded that voluntary intoxication is not a defense to the charge of second degree murder. The motion court explained, citing *Alexander v. State*, 782 S.W.2d 472, 474 (Mo.App.1990), that proof of appellant's identity as the shooter was unquestioned, and given the lack of defense options, trial counsel's use of intoxication evidence to argue accident was reasonable trial strategy.

Appellant urges that an evidentiary hearing is necessary to determine the reasons for trial counsel's actions or omissions or whether they can be justified as trial strategy. *State v. Blue*, 811 S.W.2d 405, 410 (Mo.App.1991). As noted by the court in *Thomas v. State*, 761 S.W.2d 246 (Mo.App.1988), however, rarely does the face of a Rule 29.15 motion establish that an alleged dereliction of trial counsel was part of trial strategy. *Id.* at 250. A consideration of the record as a whole can demonstrate that an alleged dereliction was, in fact, a part of trial strategy. In this event, an evidentiary hearing is not necessary. *Id.*

After reviewing the transcript, we conclude that trial counsel's use of the intoxication evidence was clearly trial strategy. Trial counsel's lack of objections during the state's case, presentation of this evidence throughout appellant's case, and argument during closing indisputably reveal that trial counsel was making tactical use of the intoxicated condition of appellant to show the shooting was an accident. We agree with the motion court that trial counsel's use of the intoxication evidence was a reasonable trial strategy, especially given the lack of defense options and overwhelming evidence against appellant. *Alexander*, 782 S.W.2d at 474. Appellant has failed to allege facts not refuted by the record that would entitle him to relief or an evidentiary hearing.

In his final subpoint, appellant argues that trial counsel was ineffective in failing to submit an instruction containing the defense of accident. Initially, appellant failed to comply with Rule 30.06(e) requiring that the alleged instruction be included in the argument portion of the brief. Although this court is unable to review a claim pertaining to an instruction not made a part of the record, *Tidwell v. State*, 784 S.W.2d 645, 648 (Mo.App.1990), we review it *ex gratia.*

No need exists for a separate instruction on accident, because under § 563.070, RSMo 1986, on the defense of accident, a finding of the elements of any homicide offense is inconsistent with such a defense. *State v. Mallett*, 732 S.W.2d 527,

536 (Mo. banc 1987). Trial counsel presented the defense of accident through testimony, including appellant's own, and in closing argument. Because the evidence of accident refutes the essential elements of the offense as set out in the verdict director, a specific accident instruction was not necessary. *State v. Bates*, 751 S.W.2d 758, 759 (Mo. banc 1988). Trial counsel's failure to submit an accident instruction, therefore, was not ineffective assistance. This final point merits no relief, nor an evidentiary hearing.

Our review of the entire record does not leave us with a definite and firm impression that a mistake has been made. Thus, the motion court's findings of fact and conclusions of law are not clearly erroneous.

Affirmed.

CRANDALL, P.J., and GRIMM, J., concur.